James Alex BLAKELEY, Trustee, Appellant,

v.

Ellen Davis HERRING et al., Appellees.

No. 15.

Court of Civil Appeals of Texas.

Tyler.

Jan. 9, 1964.

Rehearing Denied Feb. 6, 1964.

**678**

Jay S. Fichtner, Harvey L. Davis, Dallas, for appellant.

W. A. Pritchard, Bradford, Pritchard & Ashley, Andrew J. MacMaster, Dallas, for appellees.

SELLERS, Justice.

James E. Herring, deceased, and Ellen Davis Herring were married on or about September 4, 1948, and continued to live together until on or about March 25, 1960. On March 25, 1960, James E. Herring filed a suit for divorce against Ellen Davis Herring in the Domestic Relations Court of Dallas County, Texas. During this marriage there were born to them two children, twin girls, about 13 years of age at the time of this suit for divorce. Ellen Davis Herring filed a cross-action for a divorce from James E. Herring. Thereafter James E. Herring filed in this cause an inventory of their property and listed, among other property, a Profit Sharing Retirement furnished him by his employer, Marathon Insurance Company, a wholly-owned subsidiary of Pacific Finance Corporation, of the value of $9,530.00. He also listed a Group Endowment Plan, issued to him as employee of his employer by the John Hancock Mutual Life Insurance Company of the value of $1,772.72, with notation that both of these Funds were not available to him until his employment terminated.

Thereafter a divorce decree was entered on August 2, 1960, in which James E. Herring was granted a divorce from Ellen Davis Herring, and her cross-action for divorce was denied. The care and custody of the two children was awarded to James E. Herring. This judgment awards certain attorney's fees and decrees that all community property be placed in the hands of a receiver to be thereafter named. Subse-quently, Ferris McKool was named Receiver of the community property, with instructions to sell the same, pay the debts and divide the remains between the parties. No further orders were entered in the divorce court in regard to the two Profit Sharing Funds above mentioned. At the time of the divorce, Ellen Davis Herring was named as beneficiary in case of the death of James E. Herring for both funds.

On June 17, 1961, James E. Herring died testate. His will was duly probated and in which will he named James Alex Blakeley trustee for his two minor children, with full instructions with reference to the care and management of the property of his two children. Before his death and after the divorce judgment, James E. Herring changed his beneficiary from his former wife to James Alex Blakeley, Trustee, said change being authorized by his employer's retirement plan.

After the death of James E. Herring, James Alex Blakeley, in his capacity as Trustee, sought to collect the retirement annuity and profit sharing funds which, at the time of James E. Herring's death, were of the value of $11,623.86, and $2,285.48, respectively; but due to the claim of Ferris McKool, Receiver in the divorce court, and the former wife claiming the funds as community property of James E. Herring and Ellen Davis Herring at the time the divorce decree was entered and was therefore subject to the jurisdiction of the divorce court, and the payment of the community debts and attorney's fees allowed in the divorce decree.

The present suit was brought by James Alex Blakeley, Trustee, against Ellen Davis Herring, Ferris McKool, Receiver, Pacific Finance Corporation and its subsidiary, Marathon Insurance Company, the employer of James E. Herring, United California Bank (Trustee of Profit Sharing Plan), and John Hancock Mutual Life Insurance Company (Insurer of James E. Herring's retirement annuity policy), seeking a declaratory judgment (1) that no por-

tion of the funds in dispute were the community property of decedent and Ellen Davis Herring; (2) that Ferris McKool, Receiver, has no claim thereto; (3) and that the Plaintiff recover judgment against the United California Bank and John Hancock Mutual Life Insurance Company for the funds in dispute. The defendant filed an answer cross-action and third-party action, requesting the court to award said funds to Ferris McKool, Receiver, who was appointed by the Domestic Relations Court in the prior divorce decree. The Marathon Insurance Company filed its interpleader; and with all parties before the court, the funds representing the dispute were paid into the Treasury of the Court and all parties to the judgment dismissed, except Ferris McKool, Receiver, and Ellen Davis Herring. The plaintiff filed a motion for summary judgment, claiming all the funds under the undisputed facts and Ferris McKool and Ellen Davis Herring likewise filed a motion for summary judgment, claiming the funds as a part of the community property of the parties at the time of the divorce; and in the alternative, if Ferris McKool, Receiver, was not entitled to the funds, then Ellen Davis Herring receive one-half of the funds as her community property.

The Court, after hearing on these motions, granted the motion of Ferris McKool, Receiver, and ordered the funds turned over to Ferris McKool to be expended by him in accordance with the judgment of the Domestic Relations Court of Dallas County, Texas, and ordered the Clerk to turn over to Ferris McKool the proceeds which had been paid into the Treasury of the Court by John Hancock Life Insurance Company and Marathon Insurance Company, and denied to the plaintiff his application for a summary judgment. On the hearing for the summary judgment there was introduced in evidence the Employees' Profit Sharing Plan and Trust Agreement of Marathon Insurance Company, the original of which accompanied the record on this appeal. We shall not undertake to set out many of the provisions in this instrument. Insofar as the Profit Sharing Plan and Trust Agreement is concerned, we deem it sufficient to call attention to the fact that this plan was put into force around 1951. It provides that all of the funds shall be made available by the Pacific Finance Corporation and its subsidiaries and no contributions to the fund is required by the employees. It reserves to itself the right to determine or consider all questions relating to the eligibility of employees to participate. An employee for the purpose of this plan is every regular full-time salaried employee or officer of the company or a subsidiary, other than an employee or officer of Pacific Fidelity Life Insurance Company whose compensation, in whole or in part, is based on incentive or commission. Every present employee is eligible and each shall become a participant on December 31, 1951. We quote from the Plan:

"The application for participation shall signify the employee's acceptance of the benefits and terms of this plan and trust. Upon the application form the employee may designate the beneficiary or beneficiaries whom he desires to receive the benefits provided for by this plan in the event of his death. A participant may from time to time change his designated beneficiary or beneficiaries without the consent of such beneficiary or beneficiaries by filing a new designation in writing with the Committee. The Committee may, in its discretion, require that the spouse of the employee or participant also join in any designation of beneficiary or beneficiaries. The Company, Subsidiaries, Committee and Trustee may rely upon the designation last filed in accordance with the terms of this agreement. If the beneficiary or beneficiaries last designated be not living at the death of the participant, or if the participant shall die without having designated a beneficiary, the benefits provided for by this plan shall be paid to the estate of the participant."

"The Committee, in addition to all other books of account and records necessary or advisable in its judgment to properly reflect its activities, shall open and maintain a profit sharing account for each participant wherein such participant shall be credited annually with the amounts allocated to him as hereinafter provided. Such account shall be opened by the Committee as of the day each employee became a participant. As soon as the Committee has made the annual allocations among the participants, the Committee shall credit the allocated sums to the account of each participant, and the Committee shall notify the participants accordingly. Following the annual allocations, the amount credited in each participant's account shall be deemed to reflect the value of each participant's proportionate share of the trust as of the anniversary date on which the allocations are made. *Such allocations, credit and notification shall not vest in any participant any right, title or interest in the trust, except at the time or times, and upon the terms and conditions herein provided, and shall not create any liability against the Company, Subsidiaries, Committee or Trust except to the extent expressly provided.*" (Emphasis supplied.) i

A participant's interest in his profit-sharing account shall vest to the extent of 100%, irrespective of the duration of his participation, at any time upon his retirement at age 65, his death or a judicial declaration of his incompetence, or upon a determination by the Committee that he is physically or mentally incapacitated, or upon his voluntary retirement after attaining an age of 50 years

Death benefits are payable to the named beneficiary of a participant; and in the event the participant desires to change his beneficiary, he has the right to do so.

"Participation in this trust shall not give any employee the right to be retained in the Company's or Subsidiary's employ, or any right or interest in this trust other than as herein provided. The Company and the Subsidiaries reserve the right to dismiss any employee without any liability for any claim either against the trust fund except to the extent provided for herein, or against the Company or the Subsidiaries. All benefits payable hereunder shall be provided solely from the funds, and the Company and the Subsidiaries assume no responsibility for the acts of the Trustee.

"None of the benefits, payments, proceeds or claims of any participant shall be subject to any claim of any creditor of any participant and, in particular, the same shall not be subject to attachment or garnishment or other legal process by any legal creditor of any participant, nor shall any such participant have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments or proceeds which he may expect to receive, contingently or otherwise, under this agreement."

It has been observed that the divorce court never made any decree with reference to the funds in dispute. At the time of divorce, James E. Herring had no interest in the funds that he could assign or otherwise dispose of under the terms of the Profit Sharing Plan.

■ It is settled in this state that a party to a divorce decree in which the parties' rights to certain property is not partitioned in said decree there is nothing to prevent either party from going into district court to have his right to said property adjudicated. Kirberg v. Worrell et al., Tex.Com. App., 44 S.W.2d 940. It is without dispute that James E. Herring was an employee of Marathon Life Insurance Company from the time this retirement plan was put into effect until his death. There are a number of cases in Texas involving private pension plans and in most, if not all, of these the

right of the company to govern and decide all issues involved therein is reserved to the company, and the courts will not interfere unless fraud or bad faith is shown. Spiner et al. v. Western Union Telegraph Co., Tex.Civ.App., 73 S.W.2d 566, Aston v. Magnolia Petroleum Company, Tex.Civ. App., 241 S.W.2d 306, Dowling v. Texas and N. O. R. Co., Tex.Civ.App., 80 S.W.2d 456, Webster v. Southwestern Bell Telephone Co., Tex.Civ.App., 153 S.W.2d 498.

Where the funds are wholly provided by the company for the retirement plan, the courts have held that such an undertaking is a charitable enterprise:

"Fund created solely by employer to provide for benefits to employees in case of sickness, injury, or death, and administration thereof, constituted 'charitable enterprise.'" Spiner et al. v. Western Union Telegraph Co., Tex. Civ.App., 73 S.W.2d 566.

The parties forming the employees' profit sharing took out with John Hancock Mutual Life Insurance Company a group annuity contract for the benefit of their employees. This contract covered James E. Herring and contained the same or similar provisions with reference to retirement and death benefits, the same making provision for the naming of his beneficiary and his right to change the beneficiary, and provides that the funds in this annuity contract could not be assigned or otherwise disposed of by the employee. The only difference in this annuity contract and the private pension plan above set out, in this annuity contract James E. Herring did contribute to its fund.

The fact that James E. Herring made certain contributions to this private retirement contract does not affect his right to name his beneficiary and to change the beneficiary as provided in the contract, and such funds on his death should be paid to his beneficiary as against any right claimed by a former wife that the annuity benefits were a part of his estate at the time of the divorce and for that reason she owns a one-half interest therein. This question was directly before the court in the case of Buehler v. Buehler, Tex.Civ.App., 323 S.W. 2d 67:

"Suit by son to recover portion of death benefits paid to decedent's second wife under employees' profit sharing retirement plan. From adverse judgment of the District Court, Harris County, Bert H. Tunks, J., the wife appealed. The Court of Civil Appeals, Fanning, J., held that where employees who were members of employees' profit sharing retirement plan had unrestricted right to designate beneficiary to receive payment of such member's death benefits and designation was required to be in writing signed by member and bearing signature of at least one witness to member's signature, designation of beneficiary instrument was not testamentary in nature, and employee's widow, who was designated as beneficiary, was entitled to entire death benefits and son, who was only child of employee, was not entitled to a portion of death benefits on ground that benefits were a part of estate."

For a further discussion of rights as between designated beneficiary and heirs and legality of a deceased employee covered by private pension or retirement plan, see 72 A.L.R.2d 924.

█ From all we have said, it follows that full effect must be given in the plan whereby James E. Herring had the right to name his beneficiary to receive the death benefits; and since he did so in compliance with the contracts, we hold that said beneficiary is entitled to all the funds and that the receiver and former wife of James E. Herring is not entitled to any of the same under their claim of community property.

The judgment of the trial court is reversed and judgment here rendered in favor of plaintiff, James Alex Blakeley, Trustee.