Ellen Davis HERRING et al., Petitioners,

v.

James Alex BLAKELEY, Respondent.

No. A–10031.

Supreme Court of Texas.

Jan. 6, 1965.

Rehearing Denied Feb. 3, 1965.

**844**

Andrew J. MacMaster, Bradford & Pritchard, Dallas, for petitioners.

Jay S. Fichtner, Harvey L. Davis, Dallas, for respondent.

SMITH, Justice.

This declaratory judgment suit presents to the Court the primary question of whether or not a profit-sharing plan and trust agreement and a retirement annuity plan (the particulars will be given later), are property, and, if so, shall such property be classed as community property.

In the beginning, we deem it necessary to identify the parties to this suit, and to give a complete factual background in order to fully understand why it is important that the nature of the two plans be determined.

James Alex Blakeley in his capacity as Trustee under the will of James E. Herring, deceased, filed this suit alleging that Ellen Davis Herring, a feme sole, Ferris McKool, Receiver, Pacific Finance Corporation, Marathon Insurance Company, a subsidiary of P. F. C., United California Bank, and the John Hancock Mutual Life Insurance Company were necessary parties defendant.

In September, 1948, James E. and Ellen Davis Herring were husband and wife, and such relationship continued until the marital ties were broken by a judgment of divorce. Although the judgment of divorce bears the date of August 18, 1960, it was stipulated in the trial of this case that the judgment was actually entered on August 2, 1960. We construe this stipulation to mean that judgment was rendered on August 2, 1960. It was also stipulated that Ellen Davis Herring received no property at the time of the divorce. However, James E. Herring filed an inventory in which he listed both the profit-sharing plan and the annuity as assets, but specifically noted that no funds would be available from these plans until his employment terminated. Thereafter, the trial court in the divorce case appointed Ferris McKool as Receiver of the community property. As Receiver, McKool was made a party in this declaratory judgment suit.

James E. Herring, as an employee of Marathon, from and after 1951, was a qualified participant in a "PF Employee's Profit-Sharing Plan and Trust Agreement," which was created by Pacific, and the funds under this plan were contributed entirely by Pacific and Marathon.

In 1952 Herring, as an employee of Marathon, was issued and became the holder of a certificate issued by the John Hancock Mutual Life Insurance Company by virtue of its group annuity contract with Pacific. Under the provisions of the certificate, Herring would be entitled to a retirement annuity based on his contributions and the contributions of his employer toward the purchase of the annuity.

Under both of these plans the employee had the unrestricted right to designate a beneficiary to receive certain death benefits. Under the terms of both plans, Herring had the authority to change the beneficiary at will. The profit-sharing plan would pay to this designated beneficiary a cash lump sum equal to the amount credited to the deceased employee's profit-sharing account. Under the annuity contract the beneficiary would be paid the contributions made by the employee with interest thereon.

On August 17, 1960, James Herring changed the death beneficiary of the profit-sharing plan from Ellen Herring to Respondent, James Alex Blakeley, Trustee. Blakeley was also named trustee of the residuary estate of James Herring by the

latter's will. The residuary trust was primarily for the benefit of the minor children of James and Ellen Herring. On September 21, 1960, Herring made the same change with respect to the annuity. When Herring died ten months after the divorce, the death benefits from the profit-sharing plan amounted to $11,623.86 and from the annuity contract, $2,285.48. Blakeley claimed the benefits of both plans as the deceased employee's designated beneficiary.

Blakeley by this suit sought a declaratory judgment that (1) death benefits payable under the profit-sharing plan and the retirement annuity contract were not community property of Ellen Davis Herring and decedent, James Herring; (2) Ferris McKool, Receiver, who was appointed by the Court in the divorce proceedings, had no claim to the funds; and (3) Plaintiff Blakeley recover judgment against the United California Bank and John Hancock Mutual Life Insurance Company for the death benefits of the plans. The defendants filed an answer, cross action and third-party action requesting the court to award the funds to Ferris McKool, Receiver, or one-half of them to Ellen Davis Herring. John Hancock Mutual Life Insurance Company filed an interpleader. The funds from both plans were paid into the registry of the court and all parties to the proceedings were dismissed, except James Alex Blakeley, Trustee, Ellen Davis Herring and Ferris McKool, Receiver. Blakeley later filed a motion for summary judgment, claiming all the funds as the designated beneficiary under the will of James E. Herring, deceased. Ferris McKool and Ellen Davis

Herring also filed a motion for summary judgment, claiming that the funds were community property at the time of the divorce of James and Ellen Herring some ten months prior to the death of James E. Herring. They claimed that the funds should be paid to McKool as Receiver for the community property, or in the alternative, one-half of the funds should be paid to Ellen Davis Herring as her share of the community estate. We point out that each motion for summary judgment prayed for a declaratory judgment.

The trial court's summary judgment in favor of Ferris McKool, Receiver, and Ellen Davis Herring was reversed by the Court of Civil Appeals and that court rendered judgment in favor of James Alex Blakeley, Trustee. 374 S.W.2d 677.

We have concluded that the employee's interest in both plans was community property, and that as of the date of the divorce, Ellen Davis Herring is entitled to one-half of the value of these plans for the reasons now to be stated.

The profit-sharing plan contains a formula by which an employee's account vests in the employee. The amount thus vested is paid to the employee when he terminates his employment.[1] Under this formula the profit-sharing account was fully vested in Herring at the time of the divorce. The ownership of this account was unconditional. The contract simply provided that when Herring should terminate his employment, whether voluntarily or otherwise, he would be entitled to the full

---

1. Article VI, Section 6.1 provides in part: "The interest of each participant in his profit-sharing account shall vest up to a maximum of one hundred per cent (100%) in accordance with the following provisions: (a) Ten per cent (10%) for each completed full year of continuous regular employment. For a participant who is employed on January 1, 1951, the first such year shall commence January 1, 1951, and shall be completed on January 1, 1952, and for a participant who is employed subsequent to January 1, 1951, the first such year shall commence on his date of hire and shall be completed one year thereafter. On the completion of the fifth (5th) year of such continuous regular employment, all service of a participant recognized by the Company or Subsidiaries for normal seniority purposes which was completed prior to the date specified for commencement of the first year shall be added and treated as continuous regular employment in determining the number of full years of continuous regular employment."

sum credited to his profit-sharing account.[2] The employee's vested interest in the plan has all the attributes of property, and we hold that it was property at the time of the divorce.

For the same reasons the annuity contract was also property at the time of the divorce. The value of the annuity contract could also be drawn by the employee when his employment was terminated.

■ The final question is: Was this property part of the community estate at the time of the divorce? It is undisputed that the profit-sharing plan came into existence during the marriage; that all contributions to James Herring's account in the plan were made during the marriage; and that James' account fully vested in him during the marriage. As to the group retirement annuity contract, it is undisputed that James Herring became a group member during the marriage; and that all contributions by James toward the purchase of the annuity were made with community funds. We hold that James Herring's vested interest in the profit-sharing plan and his interest in the retirement annuity contract were community property at the time of the divorce.

■ Property acquired by the husband during marriage is community property unless acquired by gift, devise or descent. See Articles 4613, and 4619, Vernon's Annotated Civil Statutes. Both of these plans were acquired during the marriage. There is no contention that either was acquired by devise or descent. The following stipulation entered by these parties in the trial court negatives any implication that either plan was a gift to James Herring from his employer:

"That during the marriage of said parties, James Edward Herring was em-ployed by Marathon Insurance Company, a wholly owned subsidiary of Pacific Finance Corporation, and *as part of his compensation,* he acquired certain rights in a profit sharing plan with said Company and a retirement annuity agreement with John Hancock Mutual Life Insurance Company." (Emphasis added.)

Even without this stipulation we do not think it could be shown that the benefits of these plans were gifts to the employee. In the case of Lee v. Lee, 112 Tex. 392, 247 S.W. 828 (1923), it was argued that benefits under a plan to which the employer made all the contributions were gifts to the employee, hence his separate property. The Commission of Appeals rejected that argument, saying:

"It was in no sense a donation to the employé for individual merit, but was manifestly additional compensation for faithful and continuous service. It was as much a fruit of his labors as his regular wages or salary. It was in the strictest sense a 'gain' added to the common acquests of the marital partnership, as the direct result and fruit of his labor and services."

Courts in other community property states have held that funds of this type are community property unless they are found to be gifts from the employer. See Crossan v. Crossan, 35 Cal.App.2d 39, 94 P.2d 609 (1939); Daigre v. Daigre, 228 La. 682, 83 So.2d 900, 55 A.L.R.2d 951 (1955); 134 A.L.R. 366, 15 Am.Jur.2d 858 (Community Property § 46).

■ Blakeley seeks to avoid the effect of a holding that these plans were community property at the time of the divorce by his contention that none of the funds were available at that time. Since they were not

2. Article VI, Section 6.2 provides in part: "When a participant ceases to participate, the Committee shall with reasonable promptness authorize the Trustee to pay to the former participant a cash lump sum equal to the amount credited to his profit-sharing account * * * multiplied by the percentage of his vested interest determined in accordance with Section 6.1; * * * "

available, Blakeley argues, they could not be subject to the orders of the divorce court even if they were community property. The language of the divorce court's order, covering as it does "all of the community property of the parties," is broad enough to include community property that was not available at the time of the divorce, but that could be reduced to possession at some later date. There is no requirement in Texas that community property must be reducible to immediate possession before a divorce court can take jurisdiction to determine the parties' rights therein. Community rights may exist in interests that cannot be reduced to possession, such as remainder or reversion rights. See Cannon v. Murphy, 31 Tex. 405 (1868); Crenshaw v. Harris, 16 Tex.Civ.App. 263, 41 S.W. 391 (1897, no writ). As is said in 20 Tex.Jur.2d 555 (Divorce and Separation § 218):

"The mere fact that funds are received by a spouse after the divorce decree has been granted does not mean that they are not subject to division. Thus, for example, a wife is entitled to share with her husband in the reimbursement received for an advancement made by him to a corporation during the existence of the marital relation, paid after divorce, and in the salary of the husband earned prior to, but paid after, divorce."

■■ Blakeley relies upon the case of Allen v. Allen, 363 S.W.2d 312 (Tex.Civ. App., 1962, no writ). In that case the divorce court expressly refused to make any findings concerning the wife's alleged interest in the husband's Railroad Retirement Act pension on the ground that not enough evidence was introduced to show what

rights the husband had in the pension at the time of the divorce. The Court of Civil Appeals affirmed that holding, and went on to say that the issue of community ownership in the pension was controlled by the Railroad Retirement Act, a federal statute. The court interpreted that statute as denying the wife any rights in the pension. The case at bar is distinguishable in both respects. First, as the discussion above indicates, the record here does provide a clear definition of the husband's rights at the time of the divorce, and the divorce court's order was broad enough to include those rights. Second, no federal legislation, nor indeed any legislation, is before us for interpretation.

Blakeley turns for support of his position to certain earlier life insurance cases noted below[3] which, in effect, held that the designated beneficiary in an insurance policy is entitled to the proceeds thereof as against the claim of the community. There is no necessity for this court to enter into an exhaustive analysis of these cases to demonstrate that such cases have no application in so far as the particular point involved in the case at bar is concerned. It is sufficient to say that none of those earlier cases clearly held that a life insurance policy was property, whereas, we have specifically held that the two plans involved are property and that the proceeds of such plans constituted community property at the time the marriage of James E. Herring and Ellen Davis Herring was dissolved.

The Court of Civil Appeals cites the case of Buehler v. Buehler, Tex.Civ.App., 323 S.W.2d 67, 72 A.L.R.2d 920 (1959), wr. ref'd, n. r. e., in support of its holding that the named beneficiary was entitled to receive all of the funds. We do not agree

3. Warthan v. Haynes, 155 Tex. 413, 288 S.W.2d 481 (1956); Volunteer State Life Ins. Co. v. Hardin, 145 Tex. 245, 197 S.W.2d 105 (1946); Martin v. McAllister, 94 Tex. 567, 63 S.W. 624 (1901). Subsequent to Warthan v. Haynes, Article 23 (1), Vernon's Ann.Civ.Stats., was amended; and this Court held that the right to receive insurance proceeds payable at a future but uncertain date is "property." The statutory definition of "property" now includes "insurance policies and the effects thereof." Brown v. Lee (Tex., 1963), 371 S.W.2d 694 at 696.

that the Buehler case is in point. The relevant facts in that case were these: An employee died intestate after having named his second wife beneficiary of the death benefits under the Weingarten Employees' Profit Sharing Retirement Plan. The deceased's only son contended that the *entire death benefits* were part of his father's estate and that therefore the son was entitled to a portion thereof under the laws of descent and distribution. The court held that the named beneficiary and surviving widow was entitled to the entire proceeds. The case was a simple dispute over the proceeds at death, not over the value of the plan upon divorce. In fact, there is nothing in the opinion to indicate that the employee was ever divorced. There was no claim that the proceeds were community property. The holding in the case is consistent with the view that the employee's interest in the *plan* was community property, since the widow was also the named beneficiary.

We come now to the judgment to be entered in this case. Since there is no evidence of the value of James Herring's interest in the two plans on the date of the divorce, the cause is remanded to the trial court with instructions to ascertain such value and to award to Ellen Davis Herring one-half the value of James Herring's interest in both plans *as of August 2, 1960, the date of the divorce,* and award to James Alex Blakeley, Trustee, the remainder of the sum of $13,909.34 heretofore paid into the registry of the court less the sum of $200.00 awarded in the former judgment in this case as attorney's fees to the attorney for John Hancock Mutual Life Insurance Company. The trial court shall order that Ferris McKool, Receiver, take nothing. All costs are adjudged against James Alex Blakeley, Trustee.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to the trial court for the entry of judgment in accordance with this opinion.