**Robert O. HEISTERBERG, Appellant,**

v.

**Pauline Heisterberg STANDRIDGE,
Appellee.**

No. 13388.

Court of Appeals of Texas,
Austin.

June 15, 1983.

Rehearing Denied Sept. 7, 1983.

Randall Simmon, Law Offices of Benjamin J. Cuba, Temple, for appellant.

Carol E. Prater, Temple, for appellee.

Before PHILLIPS, C.J., and SHANNON and POWERS, JJ.

POWERS, Justice.

Pauline H. Standridge sued her former husband, Robert O. Heisterberg, requesting partition of his civil service retirement annuity, earned and held by him under the provisions of 5 U.S.C.A. §§ 8331–48 (1980 and Supp. 1982). The trial court partitioned the annuity, awarding Standridge a percentage of future annuity payments and a money judgment in an amount derived by applying a like percentage to the total amount of annuity payments received by Heisterberg since his retirement. The percentage of each monthly annuity payment awarded to Standridge is equal to half of the percentage obtained when the number of months of Heisterberg's creditable federal service during the marriage (298) is divided by the total number of months he served (363). We will reverse the judgment of the trial court and remand the cause.

Standridge and Heisterberg were married May 23, 1945. They were divorced October 2, 1975, in Bell County, Texas, at which time Heisterberg was about 54 or 55 years of age and had accumulated a little over 27 years of creditable federal service according to the undisputed evidence. Under 5 U.S.C.A. § 8336, he would have been entitled to an annuity *on retirement* only if he completed 30 years of service and separated from the service, as required by subsection (a) of that statute. While he had, of course, completed 20 years of service as required by subsection (b) of the statute, he could not separate from the civil service after becoming 60 years of age, a corollary requirement of subsection (b), without first becoming eligible for an annuity under subsection (a). At the time of the divorce, Heisterberg had

served sufficient time to receive a deferred annuity beginning at age 62, even if he did not continue in the civil federal civil service. 5 U.S.C.A. § 8338(a).

The trial court found in the case at bar that: (1) the divorce decree omits to mention the annuity, as does a written property settlement agreement made by the parties in anticipation of their divorce; and (2) Heisterberg retired on December 9, 1978 after performing 30 years "of active United States Civil Service."

The history of the legal treatment given retirement and other employee benefits in divorce actions and in post-judgment partition actions is varied and complicated. In *Busby v. Busby,* 457 S.W.2d 551, 554 (Tex. 1970), it was held that military retirement benefits were includable in the estate of the parties as community property at the time of their divorce, to the extent that the benefits were earned by military service performed during coverture. The right to the retirement benefit having become essentially *fixed* as of the date of the divorce, by virtue of the serviceman's having completed the minimum number of years of service necessary for him to receive such benefit on retirement, the benefit was held to be "vested as community property, to the extent that it accrued during the time of the marriage," notwithstanding that the service member had not actually retired and his legal right to the benefit might be defeated by the happening of various contingencies.

In 1976, the Supreme Court of Texas decided on the same day *Cearley v. Cearley,* 544 S.W.2d 661 (Tex.1976) and *Constance v. Constance,* 544 S.W.2d 659 (Tex.1976). In *Cearley,* the Court cited *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965) and a law review article as authorities for the proposition that "[i]t is now well established that *matured* private retirement, annuity, and pension benefits earned by either spouse during the marital relationship are part of the community estate and thus subject to division upon dissolution of the marriage." 544 S.W.2d at 662 (emphasis added). The Court then stated that in *Busby* it had

given the "same characterization" to military retirement benefits for the first time. *Id.* The Court in *Cearley* clarified the terminology which it would use in the opinion by stating that "accrued" would mean that the minimum number of years required for pension eligibility had been served, as distinguished from the word "matured" which would mean that all requirements had been met for immediate payment and enjoyment of the pension. *Id.* at 664, n. 4. The decision in *Cearley* holds that unaccrued, as well as unmatured, retirement benefits are interests in property subject to division upon divorce when they are earned wholly or partially during marriage, notwithstanding a larger element of uncertainty with respect to whether the right thereto would ever become "accrued" or whether the pension would ever be reduced to actual possession and enjoyment by payments received from the employer. In addition, the Court expressly approved the trial court's procedure for dividing the unaccrued benefit on divorce and providing that the portion awarded the non-earning spouse be paid to her if, as, and when payments were received from the employer, noting the virtues of this contingent arrangement: a second suit brought after maturity of the benefit is avoided; difficult evaluation problems, aimed at assigning a present value to the benefit as of the time of the divorce, are avoided; and the risk that the benefits may never mature is borne equally by the parties. *Id.* at 666.

In *Constance,* the Court sustained the trial court's holding that a plea of *res judicata* barred a suit for partition of military retirement benefits brought by the serviceman's former spouse where: (1) the benefits were "accrued" at the time of the divorce in the *Cearley* sense of that word, the serviceman having completed at the time of his divorce the requisite 20 years minimum service; (2) the benefits were not "matured," in the *Cearley* sense, because the serviceman was not actually retired at the time of the divorce; and (3) the trial court expressly stated in the divorce decree that the amount of child support required

therein of the serviceman was deemed reasonable by the court because no portion of the serviceman's retirement benefit was awarded to the wife. 544 S.W.2d at 660. The husband's plea of res judicata was sustained on the sole ground that there existed in the divorce decree express language from which one could reasonably conclude that the divorce court had actually and expressly "adjudicated ownership of the retirement benefits . . .," distinguishing *Busby* "and like cases" on the ground that the divorce decrees therein were silent regarding retirement benefits. *Id.* (The familiar aspect of the rule of res judicata, barring relitigation of issues which *might* have been litigated in the exercise of reasonable diligence and absent fraud, as well as those actually tried, evidently does not prevent partition of articles of community property omitted from express division or adjudication on divorce, it being held that the parties become joint owners of such omitted articles. *See Busby,* 457 S.W.2d at 554–55; *Whetstone v. Coffey,* 48 Tex. 269, 276–77 (1877); *cf. McMurray v. McMurray,* 78 Tex. 584, 14 S.W. 895, 896 (1890)).

The parties in *Taggart v. Taggart,* 552 S.W.2d 422 (Tex.1977) were divorced in 1968, that is, when the Supreme Court's decisions *Busby, Cearley,* and *Constance* were yet in the future. The Taggarts' divorce decree, like their property settlement agreement, failed to mention the husband's right to a military retirement benefit. The former wife sued, apparently in 1975, for partition of the retirement benefit. A comparison of the Supreme Court's opinion in *Taggart* and that of the Court of Appeals establishes that the trial court and the Court of Appeals evidently had reached different conclusions regarding whether the nature of the fleet reserve duties required of the former husband for an additional ten years, following his completion of twenty years active naval service, were sufficiently onerous to render the right to the benefit *unaccrued* and therefore *not* a "property" interest earned during coverture as required by *Busby.* Irrespective of that matter, however, the Supreme Court held that *Cearley* controlled the subsequent partition

action in *Taggart* and that the wife "owned as her part of the community estate a share in the contingent right to military benefits even though that right had not *matured* at the time of the divorce." 552 S.W.2d at 423 (emphasis added). Considering that in *Cearley* the Supreme Court had carefully distinguished the terms "accrued" and "matured," *Taggart* left it unclear whether the Supreme Court would require partition of benefits where the interest therein was not "accrued" (as defined in *Cearley*) at the time of a pre-Cearley divorce, that is, where the interest in the retirement benefit was considered *not* to be "property" at the time of the divorce, and therefore not subject to division by the divorce court.

Recently, in *Berry v. Berry,* 647 S.W.2d 945 (Tex.1983), the Supreme Court affirmed a trial court order partitioning retirement benefits where the divorce decree was again silent as to the benefits. The earning spouse, at the time of the divorce, had not reached "sixty years of age, which was a prerequisite under the non-contributory retirement plan" provided by his employer, Southwestern Bell Telephone Company. The holding is quite narrow: "we hold that pension benefits accruing as compensation for services rendered after a divorce are not a part of the estate of the parties subject to division on divorce." The decision is remarkable for statements elsewhere in the opinion which indicate that in such post-divorce partition suits, the property right to be divided equally between the parties is measured by the sum the earning spouse would have been entitled to receive on the day of the divorce, assuming, contrary to fact, that all prerequisites for the accrual and maturation of the benefit had been met as of that day. Nevertheless, it affirms the proposition that retirement benefits which were neither *accrued* nor *matured* at the time of the divorce are subject to subsequent partition if not expressly adjudicated in the earlier divorce decree.

The rule so recently affirmed in *Berry* may no doubt result in an injustice. It is probable that even before *Cearley* a spouse's unaccrued right to a retirement

benefit, although not an article of "property," was considered by trial courts in arriving at the equitable division of community property required by Tex.Fam.Code Ann. § 3.63 and its predecessor statute. While a divorce court before *Cearley* lacked the power directly to divide unaccrued rights to retirement benefits, they were no doubt available to be urged by the parties and considered by the trial court in making the required equitable division. The earning spouse could not, of course, be deprived of any part of the right to the benefit, but whatever value it had as a contingent right could be attributed to him in the property division, along with the sole risk that it would never "mature," or be reduced to possession and enjoyment.

The rule affirmed in *Berry* permits a partition suit which obviously may disestablish the equitable division previously constructed in the divorce action, assuming that the trial court performed its statutory duty to divide the property in a "just and right" manner.[1] This rule permits a further inequity by dividing the benefit in equal shares, in a post-divorce partition suit, after the earning spouse has alone borne the risk of non-enjoyment. Implicitly, *Berry* seeks to avoid these inequities by limiting the amount divided on partition to the sum receivable by the earning spouse had he been in fact retired on the date of his divorce. While necessarily fictitious when the earning spouse has not in fact retired on the day of the divorce, this sum would appear to be susceptible of simple

1. *The equitable attractiveness of the division may differ according to the state of the law at the time of the divorce.*

First, a spouse may seek partition of benefits the interest in which was of a kind that *was* considered to be a "property" interest "acquired" during the marriage, under the judicial decisions which controlled the issue at the time of the divorce. In such a case, the divorce court would have been authorized, and indeed required, to divide or award the interest in the benefits. If the decree is silent respecting such benefits, it is strong evidence that the divorce *court did not award other property to the other spouse on the basis that the spouse who earned* the benefits would ultimately receive them as his or her separate property, because if the court had considered them it probably would have expressly awarded them. The employee spouse needed only to call the benefits to the court's attention to have them awarded and thereby prevent any subsequent partition action. In such a case, an order of partition will not produce harsh results.

Second, a spouse may seek partition of benefits the interest in which was of a kind that *was not* considered at the time of the divorce to have been a "property" interest "acquired" during the marriage. In such a case, the divorce court lacked any power to divide or award any interest in the benefits, as such. However, the divorce court nevertheless would have been authorized, and indeed required, to treat the likely and eventual receipt of such benefits as an element to *consider* in making a just and right division of the community property which the parties *did* own. Thus, in the division of the *community property which the divorce* court did order, it is probable that the benefits, although not "property," did bear upon and influence the division of property actually

made by the divorce court. In these circumstances, the silence of the decree relative to the benefits is not surprising, indeed it follows from the proposition that such benefits were not "property." But if one presumes that the divorce court followed the statutory requirement of an equitable division, one must assume that the division rests upon a consideration of the benefits, and their ultimate enjoyment by one party to the exclusion of the other, who was compensated in the division by the award of other community property, if the parties had accumulated such other property to any great extent. It is thus definitely possible that a subsequent partition suit will produce harsh results in such a case.

By limiting the amount divisible in the second set of circumstances set out above, that is, by limiting the value of the benefits to the value they had at the time of the divorce, it is likely that *Berry* constitutes an attempt to ameliorate the harsh results produced by allowing a partition suit in those circumstances. However, *Berry* is not confined to that situation; and if increases in retirement benefits are in fact attributable to pre-divorce services, then *Berry* itself may produce results that are harsh and unfair.

Finally, we observe that under 5 U.S.C.A. § 8338(a), Heisterberg would have been at the time of his divorce entitled to a civil service retirement annuity beginning at age sixty-two, even if he had not continued in the civil service after the divorce. His right to that "deferred" annuity was a property right even under *Busby,* the controlling decision at the time of his divorce from Standridge; accordingly, there would have been no unfairness to Heisterberg in any division of this annuity as a result of Standridge's partition, as we have explained above.

proof in most cases. There may be, however, a doubt about the constitutionality of another aspect of the procedure directed by *Berry,* that is, the instruction in *Berry* that the non-earning spouse be awarded a portion of an article of property, in a post-divorce partition action, when under the prevailing case law at the time of the divorce the article was not "property" at all and was therefore not divisible. *Brinkerhoff-Faris Trust & Sav. Co. v. Hill,* 281 U.S. 673, 677–81, 50 S.Ct. 451, 453–54, 74 L.Ed. 1107 (1930) (state supreme court denies taxpayer due process of law when it holds that taxpayer may not obtain relief from discriminatory assessment because he failed to exhaust administrative remedies, where no administrative remedy was available under previous supreme court decision overruled in the case at bar).

■ We are, nevertheless, required to follow *Berry* and hold that Heisterberg's right to the civil service retirement annuity which he eventually earned, based upon 30 years service, was at the time of his divorce an article of community property, to the extent it was earned during coverture, even though it was not until the year after his divorce that the Supreme Court of Texas first held such contingent and unaccrued rights to be "property." Moreover, Heisterberg's right to a deferred annuity or an annuity based upon five or more years service was "accrued" at the time of the divorce and therefore a property interest even under *Busby.* Heisterberg's right to the annuity was therefore an article of property subject to Standridge's post-divorce suit for partition.

We overrule Heisterberg's points of error raising the issue of *res judicata* and contending that the trial court erred in applying principles of law which differed from those in effect at the time of his divorce.

In a separate point of error, Heisterberg contends that partition of his retirement annuity was barred by federal law pre-emption of the applicable State law, citing *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) and *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69

L.Ed.2d 589 (1981), which held that federal Railroad Retirement Act retirement benefits and military non-disability retired pay, respectively, may not be divided on divorce because the applicable federal statutes required that the employee spouse receive such benefits intact. Heisterberg also invites our attention to the fact that in these two decisions the Supreme Court of the United States relied in part on statutory language similar to that found in 5 U.S.C.A. § 8346(a) (1980), to the effect that civil service retirement benefits are not subject to state legal process. Heisterberg concedes that Congress in 1978 provided for an exception to the prohibition of § 8346(a), in cases of divorce, by its enactment of § 8345(j). He contends, however, that previous to the 1978 enactment there was no such exception and § 8346(a) applied in full force and effect at the time of his divorce, which he contends is the relevant time with respect to his claim of federal law preemption. He contends, alternatively, that even if the exception provided by § 8345(j) is applicable to his case, Standridge's suit for partition is not within the exception because it cannot possibly constitute a "court order . . . incident to [a] decree of divorce," in the words of § 8345(j).

■ We disagree. Section 8346(a) did not assign to Heisterberg's annuity right a separate property character; *at most* it merely required an award of the annuity to him intact and undivided, irrespective of whether the annuity right was community or separate property under State law. No attempt was made by the divorce court to divide the annuity; and when the present suit was instituted for partition, the intervening enactment of § 8345(j) removed any former bar against division of the annuity. Nor are we aware of an overriding federal *policy* underlying § 8346(a), previous to 1978, which would require that Heisterberg receive undivided the annuity to the extent that it is attributable to his employment services before 1978; by enacting § 8345(j) Congress expressly rejected any such continued effect of any pre-1978 preemption.

■ We therefore reach Heisterberg's second ground for invoking the doctrine of federal law preemption, namely that a trial court's partition order is not a "court order . . . incident to [a] decree of divorce," precluding application of the exception allowed by § 8345(j).

The obvious purpose of § 8345(j) is to permit division of annuities if that is necessary to effectuate state marital property law, a purpose which would be frustrated by Heisterberg's restrictive interpretation of what constitutes a "court order . . . incident to [a] decree of divorce." It would, moreover, be unreasonable in our view to interpret § 8345(j) in a way that permits division of an annuity in a divorce proceeding but denies division in a subsequent proceeding necessitated by the failure of a divorce court to divide the annuity when it was required to do so under § 3.63 of the Texas Family Code. At least one court has held that federal civil service retirement benefits are subject to partition in a post-divorce proceeding brought for that purpose, rejecting a claim of federal preemption but not expressly addressing the language of § 8345(j) with which we are concerned here. *Cowan v. Plsek,* 592 S.W.2d 422, 423 (Tex.Civ.App.1979, no writ). We overrule Heisterberg's point of error.

■ In other points of error, Heisterberg contends that the trial court erred in ordering partition of his annuity to the extent it was earned by creditable federal service performed by him over a period of seventy-four months during which the parties were married and living in the common-law State of Missouri. His contention in this regard is precluded by the recent decision of the Supreme Court of Texas in *Cameron v. Cameron,* 641 S.W.2d 210, 220–23 (Tex. 1982), holding that "property that was acquired by either spouse while domiciled [in another State] and that would have been community property if the spouse who acquired the property had been domiciled in the state [of Texas] at the time of the

acquisition" is subject to division as community property in a divorce rendered by a Texas court. When the Texas divorce court failed to divide Heisterberg's contingent right to an annuity, even to the extent it was earned during the seventy-four months in issue, it was thereafter held by the parties as tenants in common and was therefore subject to Standridge's partition action.

In another point of error, Heisterberg assigns error in the trial court's order that Standridge was entitled to 41.04% of each monthly annuity payment, to be computed on the basis of what Heisterberg would have been paid had he not elected to provide for his present spouse a survivor's annuity. The effect of Heisterberg's post-divorce election to provide the survivor's benefit for his new spouse reduced, of course, the monthly sums which he receives during his life, and the effect of the trial court's judgment is that only Heisterberg's share, and *not* Standridge's share, is reduced by virtue of his election.

Heisterberg's point of error contends that the wrong formula was applied by the trial court to calculate the amount to be deducted from each annuity payment and paid over to Standridge. We find that under *Berry* the formula applied by the trial court and the formula for which Heisterberg contends are both incorrect. We will therefore remand the case in order that the trial court may determine under *Berry* the correct amount to be awarded Standridge from each annuity payment, based upon the following discussion, in light of which the issue of Heisterberg's post-divorce election becomes moot.

*Berry* affirmed a trial court judgment awarding the wife, out of each monthly annuity payment received by her former husband, an amount determined by applying her pro rata share[2] to the amount of the monthly payment that her former husband *would* have received if he had been eligible to retire at the time of the divorce

---

**2.** Fifty percent (50%) because all 26 years of employment had been performed during cover-

ture.

and had in fact done so—a fictitious circumstance since he was not then eligible to retire. In so doing, the Supreme Court in *Berry* reversed the judgment of the Court of Appeals which had awarded the wife an amount determined by applying a different pro rata share [3] to each monthly payment if, as, and when the husband received it. The precise basis for the *Berry* decision is vague in this respect. It is possible that the Supreme Court decided that the trial court's formula for dividing the annuity was correct in itself. It is also possible that the Supreme Court affirmed the trial court judgment because the only *evidence* adduced at trial tended to show that the value of the annuity at the time of the divorce was such that the trial court's decision resulted in a correct award to each spouse of their respective shares of that value; that is to say, there was *no* evidence tending to show that the annuity had a greater value at the time of the divorce which would have made it necessary to award the wife a greater sum out of each payment in order to effectuate her correct pro rata share.

In *Berry,* the Supreme Court cited *Herring v. Blakeley,* 385 S.W.2d 843 (Tex.1965) for the proposition that the wife was entitled to her pro rata share of the value that the retirement benefits interest had on the date of the divorce. The judgment of the Court of Appeals in *Berry,* and the precedents upon which that court relied, purported to do just that:

1. The Court of Appeals and the decisions upon which it relied assumed that the interest in the benefits is *equally* earned during each month or year of the husband's employment, so that his wife owns a percentage of the whole interest equal to half the percentage obtained when the number of years of employment during the marriage is divided by the total number of years of the husband's employment. (For simplicity we will not refer to any months of employment less than a year.)

2. The Court of Appeals and the previous decisions purported then to award to

the wife the value of her pro rate share on the date of the divorce not, however, by making a lump sum award at the time of the divorce (which would require difficult evidentiary showings to evaluate the risk that the benefits may never be actually received and to calculate their present value) but by awarding her a percentage of each payment if, as, and when any payments are received by the husband.

The Supreme Court in *Berry* held that an award of the foregoing character has the effect of impermissibly invading the husband's separate property because it awards the wife an increment which derives from the husband's post-divorce employment effort when the monthly payments increase after the date of the divorce. The Supreme Court noted that the amount of Mr. Berry's monthly payments had increased substantially over what they would have been had he been eligible to retire at the time of the divorce and had in fact done so. The Court stated:

> [i]t is clear from the record in this case that twelve additional years of work following divorce, which included some twelve to fourteen pay raises, plus union contract negotiations for an improved benefits plan, brought about the increase in retirement benefits paid to Mr. Berry. These post-divorce increases cannot be awarded to Mrs. Berry, for to do so would invade Mr. Berry's separate property, which cannot be done. *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982).

This statement by the Court necessarily reflects a view that post-divorce increases in the monthly payments, over the amount they would have been at the time of divorce, are attributable *solely* to employment performed after divorce and are the employee's separate property, at least in those cases where the increases result from post-divorce pay raises and post-divorce negotiations by his union for increased retirement payments. This view rejects the premise employed by the Court of Appeals in *Berry,* a premise which attributes the post-divorce

---

**3.** Thirty-four and twenty one-hundredths percent (34.21%), that is, one-half of $^{26}/_{38}$, because

26 of the 38 years of employment had been performed during coverture.

increases equally to each year of the husband's employment, whether performed before or after the divorce. Moreover, the foregoing quotation from the Supreme Court's opinion in *Berry* is not merely a statement that the actual occurrence of such post-divorce increases cannot be taken into account in a partition action—the Court rather clearly holds that even the *possibility* of such increases after the divorce may not be taken into account *at the time of the divorce* for the purpose of arriving at the value of the annuity or other form of retirement benefit, for they represent the employee's separate property. (This is not to say, however, that the possibility of such post-divorce increases may not be considered in the general equitable division required to be made of community property at the time of the divorce.)

Having made the foregoing statement in *Berry*, the Supreme Court spoke to Mrs. Berry's contention that the post-divorce increases did not result from Mr. Berry's onerous efforts in his employment after the divorce, but rather from inflation:

> Mrs. Berry argues, however, that it was not Mr. Berry's additional twelve years of employment that caused an increase in the retirement benefits, but rather the retirement benefit plan was merely keeping pace with inflationary trends. She offers no evidence to support this contention other than Mr. Berry's admission on cross-examination that he was aware that inflation had been high in the years following the parties' divorce. Mrs. Berry argues that it was not her burden to produce testimony on inflationary effects because under the holding of *Dessommes v. Dessommes*, 505 S.W.2d 673 (Tex.Civ. App.—Dallas 1974, writ ref'd n.r.e.) (hereinafter *Dessommes II*), the burden of producing evidence was on the ex-husband. In any event Mr. Berry met his burden through the testimony of Mr. Kemp. Further, we reject the concept of inflation as a factor for our consideration as it relates to the current value of retirement benefits.

The *Dessommes* case upon which Mrs. Berry relied holds in pertinent part that the trial court erred in instructing a verdict for the employee spouse, the husband, when the wife had established more than a minimal interest in the retirement annuity and when the circumstances of the case justified imposing upon the husband the burden of proving what portion of the commingled retirement fund was attributable to his separate property, that is, his post-divorce contributions to the principal from which the annuity was derived. The "circumstances" to which the court referred were that the commingled contributions resulted from the husband's acts which were beyond the wife's control and proof of the essential facts was more accessible to him than to her.

The foregoing quotation from the Supreme Court's decision in Berry assumes that Mr. Berry had the burden of proof to show the correct amount to be divided in the partition action and that he discharged that burden by showing the only *legally* relevant amount—the amount of the annuity payment receivable by Berry on the date of his divorce from Mrs. Berry, an amount which was established by Mr. Kemp's testimony of what the monthly retirement benefit payment would have been on the day of the divorce if Mr. Berry had been eligible to retire on that day and had in fact done so. The Court was of the opinion that post-divorce inflation was irrelevant to the only issue *legally* pertinent to the case, and therefore a matter on which Mr. Berry was not required to produce evidence. We return then to the dispute between Heisterberg and Standridge.

■ In the record before us, there is only evidence which tends to show that at the time of Heisterberg's divorce in 1975 he had performed 325 months of creditable federal service, and that 297 months of that service was performed during his marriage to Standridge. If Heisterberg had been eligible to retire on the day of his divorce and commence immediately to receive retirement annuity payments, he would have received an annuity equal to 50.25% of his "average pay" under a formula prescribed in 5 U.S.

C.A. § 8339(a), § 8331(4). The record contains no evidence of what his "average pay" was at the time of his divorce from Standridge. Therefore, we are unable to determine the amount of the monthly annuity that Heisterberg would have been entitled to receive at the time of his divorce, assuming the fiction mandated by *Berry*—that he was eligible to retire on that day and had in fact done so. We are therefore forced to conclude that Heisterberg, unlike Mr. Berry, did not meet his burden of proof. On the other hand, we are not in the present case confronted with a situation where Heisterberg has been afforded every opportunity to make the requisite showing in that regard and had failed to do so, as in *Dessommes v. Dessommes*, 543 S.W.2d 165, 170 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.), where the court awarded the wife one-half of the benefits derived from the common fund which had been commingled by the husband in his contributions to the fund, before and after his divorce, with the result that they were considered "equal tenants in common," the equities being equal. This is so because under the controlling judicial decision at the time of the partition action under review, that is under *Taggart,* no such evidence was necessary or even relevant in making a determination of Standridge's share of the annuity—*Taggart* applied the formula applied by the Court of Appeals in the *Berry* case.[4] We also note that in *Herring v. Blakeley, supra,* upon which the Supreme Court relied in *Berry,* the Court disposed of the appeal as follows:

[s]ince there is no evidence of the value of James Herring's interest in the two plans on the date of the divorce, the cause is remanded to the trial court with instructions to ascertain such value and to award to Ellen Davis Herring one-half of the value of James Herring's interest in both plans *as of ... the date of the divorce.*

Significantly, in *Herring* the Supreme Court did not render judgment in any fixed amount in favor of Mrs. Herring on the basis that the trustee for the deceased former husband failed to meet his burden of proof.

■ Accordingly, we remand the case to the trial court with instructions that it determine the amount Heisterberg would have received by way of a civil service annuity on the day of his divorce from Standridge. In accordance with *Berry,* Heisterberg may satisfy his burden of proof in that regard by showing the amount of the monthly annuity payment he would have received at the time of the divorce if he had been eligible to retire at that time and had in fact done so. The trial court is instructed to award to Standridge a sum equal to 45.69% (½ of $^{297}\!/_{325}$) of the amount so determined, for each month since the divorce and for each month the annuity payment may be received after the trial court judgment following this remand.

Heisterberg raises other points of error concerning an erroneous recitation in the judgment; an allegedly erroneous inclusion of two months in the formula used to calculate Standridge's share of the retirement annuity; the trial court's overruling his motion for continuance; the trial court's exclusion of evidence of settlement negotiations at the hearing on the motion for continuance; and the trial court's failure to require Standridge's attorney to withdraw from the case. These points of error are without merit, either because no error was demonstrated, or because any such error was harmless in light of our holding herein.

Accordingly, we reverse the judgment of the trial court and remand the cause to that

4. In *Taggart,* "[t]he trial court, upon a finding that the parties were married during the time that eight-ninths of the retirement benefits accumulated, rendered judgment that plaintiff was entitled to four-ninths of *all retirement pay received* by her former husband." 552 S.W.2d at 423. The Supreme Court reformed the trial court's judgment to award to the wife "$^{246}\!/_{360}$th's of the retirement pay," on the ground that 246 of the 360 months of service by Taggart were performed during the marriage. In any event, it is clear that the Supreme Court applied this pro rata share to the amount of benefits *actually received* by the husband, and *not* to the amount of the benefit which the husband would have received if he had been eligible to retire at the time of the divorce and done so.

court for ascertainment of the value of Heisterberg's annuity on the date of his divorce from Standridge, and the entry of a judgment in accordance with this opinion.

Reversed and Remanded.