**In the Matter of the MARRIAGE OF Verne S. JOINER and Charlotte R. Joiner.**

No. 07–87–0182–CV.

Court of Appeals of Texas, Amarillo.

May 31, 1988.

Motion for Rehearing Sustained in Part, Overruled in Part and Judgment Set Aside July 6, 1988.

Rehearing Denied Aug. 12, 1988.

John J.C. O'Shea, O'Shea Hall Hart & Forcum, Lubbock, for appellant.

Donald M. Hunt, Carr Evans Fouts & Hunt, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Verne S. Joiner initiated this appeal from a judgment, which decreed the dissolution of his marriage to Charlotte R. Joiner and the division of their estate, to challenge the division of their estate, the award of attorney's fees to Charlotte, and the order for her temporary support. By a point of error, Charlotte, as cross-appellant, contends that the trial court erred in its characterization, and consequently in the division, of Verne's employee's profit sharing stock plan account. Because we agree there was a mischaracterization of the plan account, which constitutes a major portion of the parties' estate, we reverse and remand in part and affirm in part.

Verne and Charlotte were married on 18 August 1973 and divorced on 27 March 1987. Both at the time of the marriage and the divorce, Verne was employed by Ranger Insurance Company, a division of Anderson, Clayton & Co., where he began work on 9 January 1967, six and one-half years before the marriage.

Anderson, Clayton & Co. maintains a profit sharing stock plan, which embraces its employees and those of its subsidiaries and affiliated companies who for five fiscal years have been salaried employees. The company and its subsidiaries and affiliates make annual contributions to the plan, based on a percentage of the net profits for that fiscal year, at the end of the company's fiscal year on June 30. The contributions are paid to trustees who, crediting the employee-participants with their proportions of the contributions determined by the amount of the company's profits and the employees' compensation paid for that year, then invest the contributions in the stock of the company. The employee-participants do not make any contributions to the plan.

The allocated shares of stock and credits to an employee-participant are paid upon severance of employment by death, disability, or retirement to the employee or to his or her heirs. Upon severance of employment for any other reason, the employee receives the portion of his or her account that has vested, and the portion not vested, if any, is redistributed among active participants in the plan in the same way as company contributions. By the terms of the plan, a 20% interest in the employee's account vests after six years of service, i.e., after the first fiscal year of participation in the plan, and a 20% interest vests each year thereafter until the tenth year of service, i.e., the fifth fiscal year of participation in the plan, when the account becomes 100% vested.

Ranger Insurance confirmed that after meeting the requirement of five full years of service, Verne began his participation in the plan on 1 July 1972. As a result, his first fiscal year of participation ended on 30 June 1973, shortly before he and Charlotte were married on 17 August 1973. Then, the marriage, when dissolved on 27 March 1987, had spanned thirteen of the fourteen fiscal years Verne had participated in the plan.

At the time of divorce, the amount in the plan credited to Verne, which was valued in excess of $100,000 and constituted the bulk of the properties of Verne and Charlotte, was fully vested. Though not immediately reducible to possession, the community interest in the plan account was subject to division. *Herring v. Blakeley*, 385 S.W.2d 843, 846-47 (Tex.1965).

The trial court found that 33.5% of Verne's account in the plan is his separate property and 66.5% of it is community property. In making a division of the estate of the parties, the court awarded Charlotte 70% and Verne 30% of the community's 66.5% interest in the plan account.

Applying the ratio of the time of marriage to the time of participation in the plan to reach its 33.5% separate–66.5% community characterization of the plan, the court obviously calculated the time of participation in the plan by including the years of

employment required for participation in the plan. Charlotte disputes the calculation, contending that, for various reasons, only the years of contributions to the plan count, and since they were married for 13 of the 14 years in which contributions were made, the correct ratio is 13/14's, or a 93% community interest in the plan account. For other reasons, Verne defends the court's characterization, albeit he challenges the division made of the community interest, on the theory that the required preparticipation period of employment creates an expectancy to participate, much like a military pension plan, in deferred compensation by continued employment.

In our view, the court mischaracterized the nature of the plan and, to this extent, we agree with Charlotte's disputation, but we do not agree with her characterization. The explanation of our view will address the pertinent reasons advanced by Verne and Charlotte for their respective positions without specifying them seriatim.

■ Unlike a military retirement or pension plan under which benefits are earned by reason of years of service, *Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex.1976), Anderson, Clayton & Co.'s employee's profit sharing stock plan manifests that benefits are not earned during the five-year period of employment required for participation in the plan; instead, the employee first acquires a vested interest in the benefits of the plan at the end of the sixth fiscal year of employment. Thus, the initial five-year employment period only generates a mere expectancy which, by not fixing any benefit in any sums at any future date, is not a property interest to which property laws apply. Hughes, *Community–Property Aspects of Profit–Sharing Plans in Texas*, 44 Tex.L.Rev. 860, 869 (1966). It follows that since the character of property as separate or community is fixed at the very time of acquisition, *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328, 334 (1943), the crucial time for determining the character of interests in and benefits of the plan is the time when the vested interests are acquired. *Hughes, supra*, at 871. *Accord, Busby v. Busby*, 457 S.W.2d 551, 553 (Tex.1970).

■ By the application of these principles to the provisions of the plan, a 20% interest in the benefits of the plan was acquired and vested on 30 June 1973 and a similar 20% interest was acquired and vested on each June 30 thereafter through 30 June 1977, at which time the plan account was fully vested. The initial 20% interest was acquired and vested while Verne was a single man, and it is his separate property, *Colden v. Alexander, supra*; the remaining 80% was acquired and vested during the marriage, and it is community property. *Herring v. Blakeley, supra*, 385 S.W.2d at 845–46. Therefore, the extent of the community interest in the plan account is 80%; however, since the amount of the account was not payable at the time of the divorce, the benefits to be apportioned to the parties are 80% of the value of the account on the date of divorce. *Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983).

The trial court's mischaracterization of the major asset in the estate of the parties is reversible error affecting the "just and right" division of the community estate. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). We, therefore, sustain Charlotte's point of error, but we cannot, as she suggests, correctly characterize the plan account and affirm the division made of it by the trial court; we can only remand for a new division of the estate of the parties, a discretion reserved to the trial court. *Id.*

The remand renders unnecessary an address of Verne's first three points of error, by which he challenges the division made of the estate of the parties and the award of attorney's fees to Charlotte. The award of attorney's fees is but a factor to be considered by the trial court in making a "just and right" division of the estate, *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950), which is to be made upon remand, and the division originally made is of no moment. Tex.R.App.P. 90(a). Parenthetically, we have noticed that by these points, Verne asked us to find that the trial court abused its discretion in the division of the community property from a record lacking values for the properties apportioned to the parties, without which at least one court has held there can be no finding

of abuse of discretion. *See Mundy v. Mundy*, 653 S.W.2d 954, 957 (Tex.App.— Dallas 1983, no writ).

■ Within thirty days after rendition of judgment, Charlotte moved for, and after notice and a hearing the court ordered, temporary support for her pending appeal. By his fourth point of error, Verne challenges, *sans* citation of authority, the order on the ground that there is no basis for the award. To the contrary, by the procedure followed in this cause, the court is authorized to require the support of either spouse during the pendency of the appeal. Tex.Fam.Code Ann. § 3.58(h)(1) (Vernon Supp.1988). The point is overruled.

Neither party has attacked the decretal portion of the judgment dissolving the marriage. As a consequence, that part of the judgment may be affirmed, *Roach v. Roach*, 672 S.W.2d 524, 532 (Tex.App.— Amarillo 1984, no writ), as well as the undisturbed order for temporary support during the pendency of this appeal.

Accordingly, that part of the trial court's judgment making a division of the estate of the parties, including the award of attorney's fees, is severed and reversed, and that part of the cause is remanded to the trial court for a new division of the estate of the parties. In all other respects, the judgment is affirmed.

Costs occasioned by this appeal are taxed against Charlotte R. Joiner. Tex.R.App.P. 89.

### ON MOTIONS FOR REHEARING

Verne S. Joiner and Charlotte R. Joiner have each filed a motion for rehearing. In his motion, Verne reiterated contentions we considered and addressed in our original opinion to the degree necessary for the disposition of the appeal. His motion for rehearing is overruled.

In her motion for rehearing, Charlotte first proposes to waive her cross-point, the predicate for the partial reversal and remand ordered on original submission, on condition that we affirm the division of the estate of the parties made by the district court. Prior to her motion, Charlotte had presented her cross-point unconditionally, urging that we set aside the community characterization finding on the employee's profit sharing stock plan. It is only after

we have done so that she, disappointed in our determination of a community interest in the plan different from the interest she urges, proposes the conditional waiver in her motion for rehearing. The proposal comes too late for consideration. *Lone Star Gas Company v. Sheaner*, 157 Tex. 508, 305 S.W.2d 150, 153 (1957).

Alternatively and with the first of two points of error, Charlotte, still insisting that the community interest in the employee's profit sharing stock plan is 13/14ths, or 93% community, charges us with error in failing to agree with her by our reliance "on a 20% per year 'vesting' for five years which is both factually and legally inaccurate." The factual and legal inaccuracy occurred, Charlotte submits, because the plan, as opposed to a summary of it, contains no "vesting" provision; instead, she represents, the plan provides that an employee who ceases to be a participant for less than five years for any reason other than death, retirement, or disability, is subject to a "forfeiture" of a part of the balance of the participant's account.

However, the part of the plan to which Charlotte refers for her "forfeiture" representation—section 8.02 of article VIII entitled "Benefits for Participants"—is denominated, in section 8.08, as "the vesting schedule," the schedule of vesting we observed in our original opinion. Moreover, if there were any doubt about the construction of the plan in this regard, the fact that the parties to the plan, Anderson, Clayton & Co. and Verne S. Joiner, interpreted the plan to provide for the vesting schedule set forth in our original opinion constitutes the highest, if not controlling, evidence that the plan contains the vesting provision. *Lone Star Gas Co. v. X–Ray Gas Co.*, 139 Tex. 546, 164 S.W.2d 504, 508 (1942).

Consequently, we are not persuaded that we originally made a faulty analysis of the plan. Charlotte's first point of error in overruled.

■ With her second point, Charlotte assigns error to our taxing costs of appeal against her, arguing that as the party prevailing both in the trial court and on appeal by virtue of her cross-appeal, she is not

subject to the payment of costs. In making his response to Charlotte's rehearing motion, Verne did not reply to the point.

Upon reconsideration, we determine that costs of appeal should be shared equally by the parties. As a result of the appeals, Verne secured relief from the division of the parties' estate and the payment of attorney's fees ordered by the trial court, but he was otherwise unsuccessful in his attack on the judgment; Charlotte failed to secure an affirmance of the trial court's judgment, but she successfully challenged the court's separate-community characterization of Verne's employee's profit sharing stock plan account. Since each party sought review of the trial court's judgment and secured some relief, but failed to secure the complete relief sought, the costs of appeal are taxed equally against the parties. Tex. R.App.P. 89; *Damron v. C.R. Anthony Co.*, 586 S.W.2d 907, 915 (Tex.Civ.App.—Amarillo 1979, no writ); *Wichita Nat. Bank v. United States F. & Guaranty Co.*, 147 S.W.2d 295, 298 (Tex.Civ.App.—Fort Worth 1941, no writ).

Accordingly, Charlotte's motion for rehearing is sustained to the extent that costs of appeal are retaxed equally against the parties. Our former judgment of reversal and remand is set aside, and the same judgment of reversal and remand, but with costs of appeal taxed equally against the parties, is here rendered. In all other respects, Charlotte's motion for rehearing is overruled.