**Edwin C. BONIFACE, Appellant,**

v.

**Marjorie N. BONIFACE, Appellee.**

No. 13776.

Court of Appeals of Texas, Austin.

June 15, 1983.

Rehearing Denied Sept. 7, 1983.

See also Tex.App., 646 S.W.2d 333.

Don Busby, Law Offices of Don Busby, Temple, for appellant.

Randall Simmon, Cuba, Simmon & Hudman, Temple, for appellee.

Before SHANNON, POWERS and GAMMAGE, JJ.

GAMMAGE, Justice.

This is an appeal from judgment of the 169th District Court of Bell County, Texas, partitioning the civil service retirement benefits earned through federal employment of appellant, Edwin C. Boniface.

We will affirm the judgment of the trial court.

The parties were married on October 1, 1943. On January 2, 1947, appellant began working for the United States Civil Service. The parties were divorced March 24, 1972, at which time the retirement benefits in dispute were accrued and vested. No consideration was given to these benefits in the division of property in the divorce proceeding. Appellant retired from civil service on February 3, 1978 and began receiving retirement benefits. On June 5, 1981, appellee filed suit to partition the retirement benefits. The trial court granted the partition and entered judgment awarding appel-

lee $19,875.73 (40.05% of benefits already received by appellant), and 40.05% of all future benefit payments.

Appellant raises five points of error. The first four points argue, essentially, that the civil service retirement benefits are not community property and not subject to partition, that federal law did not permit division of civil service retirement benefits at the time of the divorce, and that subsequent federal amendments authorizing such division could not be applied retroactively in a suit for partition. Appellant's fifth and final point of error argues there was factually insufficient evidence for the trial court to find that $12,000 of community income was contributed to the payment of the retirement benefits program.

We turn initially to appellant's first four points of error.

■ Generally, vested interests in retirement benefits accrued during marriage are community property subject to division or partition at divorce. *Herring v. Blakely,* 385 S.W.2d 843 (Tex.1965); *Thibodeaux v. Thibodeaux,* 546 S.W.2d 662 (Tex.Civ.App. 1977, no writ).

Texas courts have traditionally held that civil service retirement benefits are community property subject to division and partition in a divorce proceeding. *Bonar v. Bonar,* 614 S.W.2d 472 (Tex.Civ.App.1981, writ ref'd n.r.e.); *Cowan v. Plsek,* 592 S.W.2d 422 (Tex.Civ.App.1979, no writ); *Matter of Marriage of Butler,* 543 S.W.2d 147 (Tex. Civ.App.1976, writ dism'd).

■ Where vested retirement benefits are not partitioned or taken into account in dividing community property in a divorce decree, the husband and wife become tenants in common or joint owners thereof, and such may be partitioned thereafter. *Cowan v. Plsek, supra,* and cases cited therein.

As to appellant's argument that federal law did not permit division of civil service benefits at the time of the divorce, we note that prior to amendment in 1978, 5 U.S.C. § 8346 provided that benefits payable under civil service retirement were "not as-signable, either in law or equity, or subject to execution, levy, attachment, garnishment, or other legal process." This provision created a barrier which prevented *the Civil Service Commission* from being subject to any legal processes for purposes of making benefit payments to anyone other than the retiree. However, it did not have the effect of classifying civil service retirement benefits as separate property which, *as between the parties,* could not be divided or partitioned in a divorce proceeding. But its practical effect was to impose the burden that, *if, as, and when benefits were received,* payment must be made *by the recipient* to the divorced spouse of a community share as determined by the judgment of the court.

In 1978, the Code was amended to permit direct payment of benefits to persons other than the retiree to the extent provided for in "any court decree of divorce, annulment, or legal separation, or the terms of *any court order* or court-approved property settlement agreement *incident to* any court decree of divorce, annulment, or legal separation." 5 U.S.C. § 8345(j)(1) (1980). [emphasis added]

This amendment simply relieved the parties of the burden of making and receiving payments between themselves and permitted the future convenience of direct payment by the Commission (Office of Personnel Management) to the divorced spouse of that portion of the benefits provided for in the court's order. The amendment created no new substantive property rights between the parties. It merely instituted a procedure by which the Commission was to recognize existing rights and cooperate with state courts in distributing benefits accordingly.

The legislative history of the 1978 amendment specifically recognized the pre-existing authority of state courts to regard civil service retirement benefits as community property and to deal with them as such:

In recent years, many State courts have ruled that future retirement benefits earned during a marriage should be considered an asset of the marriage to be

apportioned in the event of a legal separation, divorce, or annulment. [The amendment] will *authorize the Civil Service Commission to recognize such court rulings and comply with court determinations.*

In the [House Post Office and Civil Service, and Senate Governmental Affairs] committee's view, the enactment of legislation which *permits Federal cooperation with State law and court orders* is clearly needed. The committee shares the opinion of the Civil Service Commission that [the amendment] is the proper approach to the problem of benefits for former spouses.

\*   \*   \*   \*   \*   \*

[The amendment] provides that [it] shall only apply to payments made from the civil service retirement fund after the date of the enactment of this legislation. Thus, *the amendments could apply to divorces* or legal separations *which took place before the date of enactment,* but the amendments will not affect any payments of annuities or lump-sum refunds made prior to such enactment date.

S.Rep. No. 1084, 95th Cong., 2d Sess. 2, 4, *reprinted in* 1978 U.S.Code Cong. & Ad. News 1379, 1380–1382. [emphasis added]

In the regulations implementing these amendments, at 5 C.F.R. § 831.1701 (1983), we find the following:

This subpart implements portions of Pub.L. 95–366 that *require the Office of Personnel Management to comply* with a provision for the apportionment of retirement benefits in a State court order, decree, or court-approved settlement *in connection with the divorce,* annulment of marriage, or legal separation of a Federal employee or retiree.

At § 831.1709, the implementing regulations state:

(a) The provisions of this subpart apply to any refund payable on or after September 15, 1978, *and apply to any employee annuity which commenced before, on, or after September 15, 1978.* The Associate Director for Compensation *will not increase the amount apportioned*

*from current retirement benefits in order to satisfy an arrearage due the former spouse unless the court otherwise directs.* However, the Associate Director for Compensation *will honor the terms of a new or revised court order which either increases or decreases an apportionment.* These changes will be prospective only.

(b) The provisions of this subpart apply to any court order issued before, on, or after September 15, 1978; .... [emphasis added]

Thus, the procedure for making benefit payments could not be applied retroactively; payments made before the amendments must be disposed of *between the parties* pursuant to state court orders. But post-amendment benefits would be paid directly to the parties pursuant to those court orders. In other words, the 1978 amendments did not affect the nature of civil service retirement benefits accrued and vested during marriage. Such benefits were and are community property under the law of this state both before and after the amendments. But it was only after the adoption of these amendments that federal authorities could be bound by state court decisions in their future payment of benefits pursuant to the division of property incident to or arising out of a divorce.

As stated by the Chairman of the Civil Service Commission:

[In the view of the Commission] *State laws and State courts have always controlled in matters of domestic relations and property rights. These courts are specifically geared to determine such questions as an individual's obligation to a former spouse* on an individual case basis after considering many factors such as the financial status of both parties, property settlements, children involved, and the reasons for the divorce.

S.Rep. No. 1084, *supra,* at 1383. [emphasis added]

■ A partition judgment dividing community assets because an earlier divorce decree failed to address such property in any manner is, obviously, a court order inci-

dent to and arising out of the earlier court divorce proceeding. *Cowan v. Plsek, supra.* As such, it is a court order within the meaning of the 1978 amendments to the Code.

■ In the case at bar, the trial court properly granted partition to appellee of what the court determined was her community share ($19,875.73) of benefits previously paid to appellant, and granted partition to appellee of what it found to be her community share of all future benefit payments.

Appellant's first four points of error are overruled.

■ We turn next to appellant's final point of error—that there was factually insufficient evidence for the trial court to find that $12,000 of community income was contributed to the payment of the retirement benefits program.

Appellant contends that the only evidence presented at the time of trial to support this finding was the following exchange between appellant and appellee's counsel:

Q. Now, also, at the time of your divorce, you,—at the time of your retirement, you got back about sixteen thousand dollars in money that had been contributed from your earnings. When [sic] you say approximately twelve thousand of that had been contributed by the time of your divorce in 1972, somewhere around that figure.

A. I guess so.

It should be noted here that appellee was not required to establish a total dollar figure of the value of her interest in contributions to the retirement program. Appellee was required only to establish a vested community interest in the retirement benefits which existed at the time of the divorce. Since no disposition was made of the property in the divorce decree, the parties became tenants in common of the benefits at that time, and their interests were presumptively equal. *Dessommes v. Dessommes,* 505 S.W.2d 673, 678 (Tex.Civ.App.

1973, writ ref'd n.r.e.), and authorities cited therein.

Their interests, however, did not remain equal because contributions to the retirement program were continued after the divorce. And, although appellee might not have established the exact extent of her interest in the retirement benefits program, she has established a substantial, if undetermined, interest based on the contributions made during the marriage. Since the parties were presumed to have equal interests in the benefits at the time of divorce, and appellant made additional contributions to the retirement program after the divorce, it was incumbent upon him to show what portion of the commingled contributions was attributable to his separate earnings. *Id.,* 679, 680.

As stated by the Dallas Court of Civil Appeals in *Dessommes, id.,* at 680:

The commingling of funds was the result of his acts rather than hers. He chose to remain in the same employment and so earned additional contributions to the fund. Although that course was not wrongful, it was certainly beyond plaintiff's control.... Also, proof of the essential facts is more accessible to him than to her.

The record in the case at bar shows that appellant offered *no evidence* as to what sums were contributions from either community or separate earnings. However, in addition to appellant's previously indicated response to examination by appellee's counsel, we believe there is other evidence in the record of this case sufficient to support a finding by the trial court that $12,000 of community income was contributed to the retirement benefits program.

Appellant's answers to appellee's requests for admissions and his testimony at trial establish that the parties were married for 27 years, four months and 27 days of appellant's total credited service for retirement benefits of 34 years, two months and 16 days, and that appellant's total contribution from all earnings to the retirement program was $16,179.00. Calculated at the total community interest of 80.1% deter-

mined by the trial court (40.05% attributable to each party), the community portion of the total contribution would be $12,-959.38, a figure well in excess of that found by the court to be the community contribution.

Appellant cites us to no evidence that a lesser figure would be appropriate, and we find no contravening evidence in our examination of the record. Therefore, viewing the record as a whole, we do not find the trial court's finding of $12,000 community contribution to the retirement benefits program to be so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Appellant's fifth point of error is overruled.

Accordingly, for the reasons stated herein, the judgment of the trial court is in all things affirmed.

POWERS, Justice, concurring.

I concur in the judgment reached by the majority but I cannot agree with all of the reasoning by which it is reached.

Initially, one should note that appellant has not brought to this Court a point of error by which he contends that his contingent right to an annuity on retirement was not, at the time of his divorce, an article of "property" under the judicial decisions controlling at the time of the divorce, and therefore not divisible by the divorce court under Tex.Fam.Code Ann. § 3.63 (Supp. 1982). *See Heisterberg v. Standridge,* No. 13,388, 656 S.W.2d 138 (Tex.App.—Austin 1983). Moreover, the Bonifaces had in my view "acquired" a "property" interest in the annuity before their divorce, even under the judicial decisions which bound the divorce court. At the time of their divorce in 1972, appellant was fifty years of age and had performed something over twenty-seven years of creditable federal service. Accordingly, at the time of his divorce appellant had not yet served the minimum number of years necessary to receive annuity payments *immediately upon his retirement* under 5 U.S.C.A.

§ 8336(a) (1980), and would not do so until he reached age fifty-five in 1977, assuming that he continued in the federal service. He had served, nevertheless, the minimum number of years required to receive a "deferred annuity" under the provisions of § 8338(a), consisting of annuity payments beginning at age 62, irrespective of when he retired.

At this point one observes that the majority opinion speaks of the retirement benefits in this cause as having "accrued" and "vested." I believe it is necessary to explain that an interest in contingent future annuity payments of the kind in issue here is now considered a property interest, subject to division on divorce to the extent it is community property, irrespective of whether the interest is "accrued" or "matured" at the time of the divorce. *Cearley v. Cearley,* 544 S.W.2d 661, 664 & n. 4 (Tex.1976).

Next, we should not omit to mention, it seems to me, the rather clear error in the trial court judgment wherein appellant is required to pay to appellee "40.05% of each monthly amount ... without reduction of said benefits for any amounts paid for any survivor's benefits or any other deductions, ..." This is inconsistent with *Berry v. Berry,* 647 S.W.2d 945 (Tex.1983) because it awards to appellee more out of each payment than the amount she would have received if appellant had retired on the date of the divorce, as we have discussed in *Heisterberg, supra.* Appellant has, however, failed to raise a point of error which may fairly be viewed as attacking this aspect of the trial court judgment.

Finally, I cannot concur with the majority's reasoning in their disposition of appellant's claim that federal law preempted the division of his retirement annuity in appellee's partition suit. Appellant argues that prior to the 1978 enactment of 5 U.S.C.A. § 8345(j), the provisions of § 8346 precluded a divorce court's division of his retirement annuity and that his divorce proceeding was governed by these provisions, which are similar to those relied upon in part to effect preemption in *Hisquierdo v. His-*

*quierdo,* 99 U.S. 572, 439 U.S. 572, 59 L.Ed.2d 1 (1979) and *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). As in *Heisterberg, supra,* appellant contends that § 8346 precludes a division of his retirement annuity in a partition suit because the enactment of the exception provided by § 8345(j) did not become effective until after his divorce; and, moreover, the trial court's partition order is not within the exception contained in § 8345(j) because it is not an order incident to a divorce.

The majority disposes of appellant's first contention by holding that the federal statutes applicable to his annuity right *never* pre-empted the division of annuity rights thereunder, for it was permissible under those statutes for a State divorce court to order the annuitant to remit a portion of the annuities to his former spouse after he received them from the Office of Personnel Management; and that the 1978 enactment of § 8345(j) did not operate to confer this authority for the first time upon State courts, but merely authorized the Office to make payments directly to the annuitant's former spouse. In order to assign this meaning to the pertinent pre-1978 federal statutes, the majority relies solely upon and quotes extensively from the Senate committee report which recommended passage of the *1978* enactment of the amendment codified as § 8345(j), and subsequent regulations which implement that enactment. While these materials do indeed reflect the congressional *understanding* of the effect of the pre-1978 statutes, they do not constitute "legislative history" with respect to the pre-1978 statutes. The legislative history which is most pertinent to *those* earlier statutes is that which preceded their enactment.

> [A] subsequent legislative construction of a statute is not conclusive of the meaning of the former statute. "While a legislative construction of an act is entitled to due consideration from the courts, it is by no means binding; ...." Although comments about an earlier act in a legislative committee report on a subsequent bill are not part of the legislative history of the earlier act and therefore have less probative force than legislative history, they are entitled to consideration as an expert opinion concerning its proper interpretation.

2A Sutherland, Statutory Construction § 49.11 at 265–66 (1973). Moreover, legislative history is not the sole resource for interpreting the previous statutes and the majority does not demonstrate how and why the legislative history of the 1978 enactment should prevail over the express language in § 8346, which was startlingly similar to that relied upon in part in *Hisquierdo* and *McCarty* for the conclusions that the federal statutes in those cases *did* result in preemption. It is therefore distinctly possible that the Supreme Court of the United States would have applied § 8346, together with the reasoning employed in those cases as to *other* factors, to reach a similar result with respect to civil service retirement annuities, irrespective of what Congress may have thought in 1978 with respect to its interpretation of the relevant statutes as they existed before that year.

I point out my differences with the majority opinion because I do not wish to be bound by the statements and reasoning by which their conclusion is reached. Moreover, I believe it unnecessary to decide whether federal law, previous to 1978, preempted a State divorce court's division of civil service retirement annuities. Even if the doctrine of federal preemption did apply to appellant's divorce judgment, it does not apply to appellee's partition suit for the reasons stated in *Heisterberg*—the preemption doctrine cannot be held to have given to appellant's annuity the legal status of separate property, at the time of the divorce, and when the *partition* action was adjudicated, the exception of § 8345(j) *was* applicable, permitting division of the annuity under State property law.

With these reservations and clarifications, I concur in the judgment.