**Walter E. NAYDAN, Appellant,**

v.

**Connie Jo NAYDAN, Appellee.**

**No. 05–90–00434–CV.**

Court of Appeals of Texas, Dallas.

Nov. 20, 1990.

Rehearing Denied Dec. 20, 1990.

Roger Turner, Dallas, for appellant.

Paul T. Fanning, John Alan Goren, Dallas, for appellee.

Before WHITHAM, ROWE and THOMAS, JJ.

## OPINION

WHITHAM, Justice.

In this post-divorce action for partition of federal civil service retirement benefits, the ex-husband-appellant, Walter E. Naydan, appeals from a judgment in favor of the ex-wife-appellee, Connie Jo Naydan. The trial court determined that Connie had a twenty-four percent interest in the benefits, rendered a money judgment against Walter for the sum of $13,586.31 as Connie's share of benefits paid to Walter prior to judgment, ordered Walter to deposit future benefits into a trust bank account and that twenty-four percent of those deposits be disbursed to Connie. In addition, the trial court awarded attorney's fees to Connie. The issues focus on (1) whether federal statutes and regulations prohibit a state court from making the division of the benefits, (2) whether the evidence conclusively proved that the benefits had a value of $11,751.00 on the date of the divorce, (3) whether the trial court awarded excessive attorney's fees and abused its discretion in awarding attorney's fees, (4) whether the trial court erred in excluding testimony, and (5) whether the trial court had jurisdiction to make the award. Because we find no merit in any of Walter's points of error, we affirm. We conclude, however, that this appeal has been taken for delay and without sufficient cause. Consequently, we assess damages against Walter pursuant to TEX.R.APP.P. 84 and render judgment in favor of Connie for the amount of those damages.

The parties were married on April 5, 1952. In August 1962, they moved to Dallas, Texas, when Walter began employment with the Veterans' Administration of the federal government. He remained continuously employed by the VA until his retirement. The parties were divorced on October 16, 1974. Thus, at the time of the divorce, Walter had twelve years of service. The divorce decree did not award Walter's civil service retirement benefits nor did it address the issue. In August 1987, Walter retired and commenced receiving civil service retirement benefits. Subsequent to Walter's retirement Connie made several demands on him to pay her share of those benefits to her. Walter, however, failed to make any such payment. At trial, Walter testified that at the time of the divorce he was not eligible to retire and receive immediate payment of any benefits, but that he was entitled to payment of benefits should he retire when he attained a certain age. Walter also testified that he had already received retirement benefit payments totalling $56,609.64, none of which he had shared with Connie.

The trial court's "Post Divorce Judgment of Partition of Retirement Benefits" ordered Walter to assign to and pay Connie twenty-four percent of each and every retirement benefit received by him after October 31, 1989, to open a separate checking account into which his retirement benefit payments are to be deposited, to direct the bank to pay twenty-four percent of each payment so deposited to Connie, and further ordered that Walter be constituted trustee of the funds for the benefit of Connie. The judgment also ordered that Connie recover $13,586.31 as twenty-four percent of the amount of retirement benefits received by Walter from the date of his retirement to October 1989.

In his first and second points of error, Walter contends that the trial court erred in entering judgment against him (1) because 5 U.S.C. § 8345(j) prohibits a state court from dividing civil service retirement benefits, and (2) because 5 C.F.R. 831.-1704(b) and (d) defining "qualifying court orders" prohibits a state court from dividing civil service retirement benefits. Subsection (j) was added to section 8345 of the Civil Service Retirement Act on September 15, 1978. Act of Sept. 15, 1978, P.L. 95–366, 92 Stat. 600. That section reads in pertinent part:

> (j)(1) Payments under this subchapter which would otherwise be made to an employee, Member, or annuitant based upon his service shall be paid (in whole or in part) by the Commission to another person if and to the extent expressly provided for in the terms of any court decree of divorce, annulment, or legal separation, or the terms of any court

order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. Any payment under this paragraph to a person bars recovery by any other person.

Retirement benefits are subject to division as vested contingent community property rights even though the present right has not fully matured. *Taggart v. Taggart*, 552 S.W.2d 422, 423 (Tex.1977). Generally, civil service retirement benefits earned during marriage are community property subject to division or partition in a divorce proceeding. *Hoppe v. Godeke*, 774 S.W.2d 368, 370 (Tex.App.—Austin 1989, writ denied). In the present case, we conclude that section 8345(j) does not prohibit division of civil service retirement benefits, but instead, specifically permits division.

■■■ Under 5 U.S.C. § 8345(j)(1), United States civil service retirement benefits as community property can be divided by the court in a divorce decree and required to be paid directly to the party awarded same. *Cowan v. Plsek*, 592 S.W.2d 422, 423 (Tex.Civ.App.—Waco 1979, no writ). Section 8345(j)(1) specifically permits award of a fractional portion to wife. *See Adams v. Adams*, 623 S.W.2d 500, 501 (Tex.App.— Fort Worth 1981, no writ). Indeed, the civil service amendments require the United States to recognize the community property division of civil service retirement benefits by a state court. *See Adams*, 623 S.W.2d at 501 (citing *McCarty v. McCarty*, 453 U.S. 210, 230–31, 101 S.Ct. 2728, 2740, 69 L.Ed.2d 589 (1981)). Where vested retirement benefits, as here, are not partitioned or taken into account in dividing community property in a divorce decree, the husband and wife become tenants in common or joint owners thereof, and such may be partitioned thereafter. *Cowan*, 592 S.W.2d at 423. The obvious purpose of section 8345(j) is to permit division of civil service retirement annuities if that is necessary to effectuate state marital property law. *Heisterberg v. Standridge*, 656 S.W.2d 138, 144 (Tex.App.—Austin 1983, no writ). The Federal Civil Service Retirement Act provides that retirement annuity benefits may be divided in accordance with state law. *Hoppe*, 774 S.W.2d at 371 (citing 5 U.S.C. § 8345(j)(1)). Moreover, it makes no difference that federal law did not permit division of civil service retirement benefits at the time of divorce. *See Boniface v. Boniface*, 656 S.W.2d 131, 133 (Tex.App.—Austin 1983, no writ). Indeed, section 8345(j)(1) authorizes such division and can be applied retroactively in a suit for partition. *See Boniface*, 656 S.W.2d at 134–35. Section 8345(j)(1) created no new substantive rights between the parties. It merely instituted a procedure by which the federal government was to recognize existing rights and cooperate with state courts in distributing benefits accordingly. *See Boniface*, 656 S.W.2d at 133. The legislative history of the 1978 amendment [§ 8345(j)(1)] specifically recognized the pre-existing authority of state courts to regard civil service retirement benefits as community property and to deal with them as such. *Boniface*, 656 S.W.2d at 133. The 1978 amendments did not affect the nature of civil service retirement benefits that accrued and vested during marriage. Such benefits were and are community property under the law of this state both before and after the amendments. *Boniface*, 656 S.W.2d at 134. It was only after adoption of these amendments that federal authorities could be bound by state court decisions in their future payment of benefits pursuant to the division of property incident to or arising out of a divorce. *Boniface*, 656 S.W.2d at 134. A partition judgment dividing community assets because an earlier divorce decree failed to address such property in any manner is, obviously, a court order incident to and arising out of the earlier divorce proceedings. *Boniface*, 656 S.W.2d at 134–35. We conclude, therefore, that in the present case the trial court properly granted partition to Connie of what the trial court determined was her community share of benefits previously paid to Walter, and granted partition to Connie of what the trial court found to be her community share of all future benefit payments. Hence, it follows that section 8345(j) does not prohibit a state court from dividing civil service retirement

benefits. We overrule Walter's first point of error.

At oral argument, Walter conceded that if we were to decide that section 8345(j) does not prohibit a state court from dividing civil service retirement benefits, then we must overrule his second point of error. Indeed, we must. A partition judgment dividing community assets because an earlier divorce decree failed to address such property in any manner is a "qualifying court order" within the meaning of 5 C.F.R. 831.1704(b) and (d) as applicable in the present case. (In the present case, we do not deal with a survivorship annuity.) *See Boniface*, 656 S.W.2d at 134–35. We overrule Walter's second point of error.

█ In his sixth point of error, Walter contends that the trial court erred in partitioning his retirement benefits as undivided assets because the prior trial court lacked jurisdiction to divide such property pursuant to section 3.92 of the Texas Family Code. TEX.FAM.CODE ANN. § 3.92 (Vernon Supp.1990). Walter grounds this contention on the assertion that section 3.92 did not become effective until November 1, 1987, and only applies to orders, decrees or judgments rendered after that date. (The parties were divorced October 16, 1974). For the purposes of this opinion, we assume but do not decide, that section 3.92 bears in some way upon the trial court's jurisdiction to divide Walter's civil service retirement benefits. (See above our disposition of Walter's first two points of error.) Nevertheless, we conclude that the trial court had such jurisdiction. Section 3.92 of the Family Code is found in chapter 3, subchapter F of that code. All of subchapter F was added to chapter 3 of the Family Code by section 3 of House Bill 168, passed in 1987 by the Texas Legislature. Act of July 20, 1987, 70th Leg., 2d C.S., ch. 50, § 3, 1987 TEX.GEN.LAWS 160, 161. In 1989, the Texas Legislature adopted various amendments to the Family Code, providing in pertinent part:

SECTION 10. ....

(b) *The amendment that added Subchapter F* to Chapter 3, Family Code, made by Chapter 50, Acts of the 70th Legislature, 2nd Called Session, 1987, *applies* to decrees of divorce and annulment rendered *before*, on, or after *November 1, 1987.*

\* \* \* \* \* \*

SECTION 12. *This Act* takes effect September 1, 1989, and, except as provided by Sections 9 and 10, *applies to a cause of action pending* on or brought after this date.

Act of May 26, 1989, 71st Leg., R.S., ch. 371, §§ 10 and 12, 1989 TEX.GEN.LAWS 1462, 1466 (emphasis added). Thus, the Legislature expressly gave the trial court the authority to divide retirement benefits that had not previously been awarded in the divorce decree rendered prior to November 1, 1987. That authority derives either from section 3.92, to which Walter refers, or from section 3.91, which actually does apply since the divorce court did have jurisdiction over the retirement benefits property. Regardless whether section 3.91 or 3.92 applies, both sections are found in subchapter F of chapter 3 of the Family Code. In addition, section 12 of the 1989 amendments, quoted above, provides that the amendments apply to all cases pending on the effective date of those amendments, September 1, 1989. This suit was so pending; it was tried the following month on October 5, 1989, and judgment was rendered January 16, 1990. Therefore, the trial court had an express statutory grant of authority, including the authority to divide the retirement benefits on a "just and right" basis. We conclude that the trial court had jurisdiction to divide Walter's civil service retirement benefits. We overrule Walter's sixth point of error.

█ In his third point of error, Walter contends that the trial court erred in awarding Connie a judgment in the sum of $13,586.31 because the undisputed evidence showed that the benefits only had a value of $11,751.00 on October 12, 1974. Walter argues that as a matter of law any valuation in excess of $11,751.00 would be due to Walter's separate efforts and labor subsequent to the divorce. Walter reasons that if he had not returned to work for the federal government after the divorce, the

benefit would only have the value of $11,-751.00. Nowhere in his brief does Walter tell us where we can read about or ascertain this $11,751.00 figure. Indeed, Connie tells us that the figure of $11,751.00 is never mentioned in the record. We conclude, therefore, that in the present case the references to certain facts do not contain proper references to the record where the matters complained of may be found. *Kropp v. Prather,* 526 S.W.2d 283, 288 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r. e.). The burden is on appellant to show that the record supports his contentions and to point out the place in the record where the matters complained of are shown. *Kropp,* 526 S.W.2d at 288. In the present case, as in *Kropp,* we do not feel that the rules require us to read through the entire record to determine whether appellant's allegations have any validity. We conclude, as did the court in *Kropp,* that appellant has failed to meet his burden. *See Kropp,* 526 S.W.2d at 288. We conclude further, therefore, that the trial court did not err in awarding Connie a judgment in the sum of $13,586.31. We overrule Walter's third point of error.

■ In his fifth point of error, Walter contends that the trial court erred in refusing to allow Walter to testify regarding the details of his own retirement plan as it related to these proceedings. At trial, Walter testified that Exhibit 3 was a copy of his earnings and leave statement, dated as of August 17, 1974 (two months before the divorce), and that such document showed the amount of his contribution to his retirement plan in the amount of $11,478.54. Walter's counsel then asked him questions regarding the sum of $11,817.58. Nowhere is the $11,817.58 figure explained, but we assume it to be some alleged calculation of the contribution figure at or near the date of the divorce. (This is a wholly different figure from the $11,751.00 raised in point of error number three) Walter insists that the excluded testimony, about which Walter complains, concerned what his rights "would have been *to this $11,817.58* ... if [he] had chose [*sic*] to *quit* " his employment at the time of the parties' divorce. The trial court sustained an objection to the

question. Walter insists that this testimony was very material and required by law.

Walter, however, argues only the first part of the inquiry, *i.e.,* that the trial court erred in refusing to admit the testimony. Nowhere does Walter construct for us an argument that the asserted error was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case. *See* TEX.R.APP.P. 81(b)(1). Therefore, the second part of the inquiry was not briefed. Hence, Walter does not complain that trial court error led to an improper judgment. Points of error not separately briefed are waived. *La Sara Grain v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 568 (Tex.1984) (on motion for reh'g). A point of error that is not briefed fails to meet the minimum requirements of Rule 418, Texas Rules of Civil Procedure [now TEX.R.APP.P. 74(f) ], and the appellate court considers such a point to be waived. *Schero v. Astra Bar, Inc.,* 596 S.W.2d 613, 614 (Tex.Civ.App.— Corpus Christi 1980, no writ). We conclude that Walter waived his fifth point of error by not addressing the question of the consequences of the asserted trial court error. Indeed, the court of appeals may not reverse a trial court's judgment in the absence of properly assigned error. *Texas Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex.1986). We overrule Walter's fifth point of error.

■ In his fourth point of error, Walter contends that the trial court's award of attorney's fees in the amounts awarded is excessive and an abuse of discretion. We begin by noting that the award was not in an absolute fee amount of $25,500.00 as urged by Walter. True, the judgment awards $25,500.00. In her brief, however, Connie concedes that the trial court awarded only $6,000.00 for attorney's fees in the trial court. We express no opinion as to application of credits against the $25,500.00 affected by the appellate process. These credits total $19,500.00. We emphasize that interpretation of the trial court's judgment is not before us and we make none. Nevertheless, Walter would have us hold the award excessive and the result of an

abuse of trial court discretion. We quote Walter's entire argument presented to persuade us to this holding:

> The Judgment of the Court in its post-divorce judgment of Partition of Retirement Benefits (Tr. 91 et seq.) awarded [Connie's Counsel] attorneys [*sic*] fees in the sum of $25,500. All the law this case involves is 5 U.S.C.A. 8345 and its interpretative regulation 5 CFR 831.1701 et seq.
>
> The Statement of Facts record of the trial of this cause is only 43 pages of evidence until [Connie's counsel] called himself to testify regarding attorneys fees on page 43 through page 54. [Walter] asks the Court of Appeals to take Judicial Notice of Reasonable Attorneys Fees in this cause pursuant to Section 38.004 of the Texas Civil Practices and Remedies Code. [Walter] also asks the Court of Appeals to give effect to the Texas Disciplinary Rules of Professional Conduct, enacted October 17, 1989 by the Texas Supreme Court, and Rule 1.04(6) on fees which reads as follows:
>
>> For example, a lawyer should not abuse a fee arrangement based primarily on hourly charges by using wasteful procedures.
>
> [Walter] petitions the Court of Appeals to grant him a reasonable and fair RE-MITTITUR.

From this argument, we are not persuaded that the award is excessive and the result of an abuse of discretion. Thus, in the present case, we cannot say that the award is excessive and the result of an abuse of discretion. We overrule Walter's fourth point of error.

■ Before closing this opinion, we address Connie's motion that we award her damages under appellate Rule 84. That rule provides:

> In civil cases where the court of appeals shall determine that an appellant has taken an appeal for delay and without sufficient cause, then the court may, as part of its judgment, award each prevailing appellee an amount not to exceed ten percent of the amount of damages awarded to such appellee as damages against such appellant.

TEX.R.APP.P. 84. Hence, we must determine if Walter has taken this appeal for delay and without sufficient cause. First, we consider the question of taking the appeal without sufficient cause. In her brief, Connie relies upon the above cited cases of *Hoppe, Boniface, Heisterberg, Adams,* and *Cowan* which this court considers to control disposition of Walter's first two points of error. At oral argument, Walter's counsel was asked by the court to speak to those five cases. Walter's counsel declined to do so on the excuse that he had not studied them and was not prepared to discuss those cases. Indeed, nowhere in his brief does Walter cite any of those cases or ask that we distinguish them or refuse to follow them as incorrect statements of the law. Thus, we can only conclude that Walter has prosecuted this appeal with the deliberate purpose of ignoring existing law as propounded by our sister courts of appeals. We reach this conclusion because a non-frivolous appellant would meet these cases "head-on," distinguish them, or argue erroneous reasoning, and ask that we not follow them, thus inviting the Supreme Court to resolve the matter. We conclude, therefore, that Walter has taken this appeal without sufficient cause. Next, we consider whether Walter has taken this appeal for delay. Rule 84 derives from former Rule 438 of the Texas Rules of Civil Procedure. In addressing the "has been taken for delay" question under the former rule, we looked at the case from the point of view of the advocate and determined whether he had reasonable grounds to believe that the case would be reversed. *See Beckham v. City Wide Air Conditioning Co.,* 695 S.W.2d 660, 663 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Assuming this to be the correct standard under Rule 84, we apply it to the present case. Hence, in considering the "has taken an appeal for delay" required finding in the present case under Rule 84, we again look at Walter's deliberate purpose of ignoring existing law as propounded by our sister courts of appeals. We conclude that such conduct reflects dilatory tactics on the part of Wal-

ter's attorney. *See Beckham,* 695 S.W.2d at 663. Consequently, we conclude that Walter's counsel, as advocate, had no reasonable grounds to believe that the case would be reversed. *See Beckham,* 695 S.W.2d at 663. We conclude, therefore, that Walter has taken this appeal for delay. The purpose of Rule 84 is to shift part of an appellee's expense and burden of defending himself in a frivolous appeal to the appellant. *Dallas County Appraisal District v. The Leaves, Inc.,* 742 S.W.2d 424, 431 (Tex.App.—Dallas 1987, writ denied). Therefore, we conclude that we must assess damages under Rule 84 of ten percent of the trial court's monetary judgment against Walter. Accordingly, we assess damages against Walter and in favor of Connie in the amount of $1,358.63.

We affirm the trial court's judgment. We render judgment in favor of Connie and against Walter in the sum of $1,358.63 together with interest at the rate of ten percent (10%) per annum from the date of this opinion.[1]

**1.** Computation of judgment rate by the consumer credit commissioner for month of November 1990, 15 Tex.Reg. 6218 (1990), pursuant to Tex. Rev.Civ.Stat.Ann. art. 5069–1.05, § 2 (Vernon Supp.1990). The contents of the Texas Register are to be judicially noticed and constitute prima facie evidence of the text of the documents published in the Register and of the fact that they are in effect on and after the date of the notation. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 4(c) (Vernon Supp.1990).