CRAWLEY, Presiding Judge.
The parties were divorced in April 1995, after a 30-year marriage. At the time of the divorce, John William Harmand (“the husband”) was a civil-service employee of the United States government covered by the Federal Employees’ Retirement System (“FERS”). Arlene Margo Harmand (“the wife”) had no retirement benefits. The final judgment of divorce incorporated the parties’ settlement agreement. Paragraph 10 of the divorce judgment states:
“10. The [wife] shall receive as her separate property, an interest equal to one-half (½) of the value of the [husband’s] retirement plan upon his retirement. If the [husband] shall predecease the [wife], she shall be entitled to one-half of any retirement benefits accrued. If necessary, the parties shall cooperate in submitting and effecting a Qualified Domestic Relations Order to the Plan Administrator and/or to the Circuit Court of Baldwin County. The intent of this paragraph is to assure to each party the benefits of said retirement funds without incurring tax liability or associated penalties or costs. Moreover, the award to [the wife] of an interest in [the husband’s] retirement plan is not intended to affect tax liability, penalties or costs to the retirement funds to be maintained by [the husband]. It is understood that this provision shall not entitle the wife to funds from the [husband’s] separate Social Security checks. Either party agrees, to pay the attorney fees and costs for the other should it become necessary to enforce this provision.”
In December 1995, the trial court entered a Qualified, Domestic Relations Order (“QDRO”) that provided, in pertinent part:
“The former [wife] is entitled to 50% of the [husband’s] gross monthly annuity under the Civil Service Retirement System. The United States Office of Personnel Management is directed to pay the former [wife’s] share directly to the former [wife]. The former [wife] shall have this amount as her separate property and in addition thereto shall have as her separate property any interest or earnings accruing thereon subsequent to the date of this order.”
Neither party appealed the judgment of divorce.
The husband worked eight years after the divorce and retired in June 2003. He testified that his gross monthly FERS retirement benefit was $1,014, from which he received $373 per month, the wife received $296.39 per month, and the balance, he said, was applied to taxes and health insurance. The wife received direct payments of $296.39 per month from the United States Office of Personnel Management *20 (“OPM”) based on the following benefit-calculation formula for a former spouse’s “prorata share” of benefits contained in 5 C.F.R. § 838.621:
“(a) Prorata share means one-half of the fraction whose numerator is the number of months of Federal civilian and military service that the employee performed during the marriage and whose denominator is'the total number of months of Federal civilian and military service performed by the employee.”
OPM determined that the wife’s pro rata share was 29.23% of the husband’s monthly gross retirement benefit. It derived that percentage by calculating one-half of the fraction 145/248, with 145 representing the number of months the husband worked for the federal' government during the marriage and 248 representing the total number of months the husband worked for the federal government. This fraction is known as the “coverture fraction.” See Wilkinson v. Wilkinson, 905 So.2d 1, 14 (Ala.Civ.App.2004)(Yates, P.J., concurring in the result).'
On January 16, 2004, the wife filed a contempt petition, alleging that the husband had failed to pay her one-half of his retirement benefits ($507 per month), which, she claimed, the divorce judgment had ordered him to pay. Following an ore tenus proceeding, the trial court entered a judgment in August 2004 that states, in pertinent part:
“This Court finds that the parties did agree in their original divorce agreement that the [wife] would be'entitled to one-half (½) of the [husband’s] federal retirement annuity. Presently, the husband is receiving $1,014.00 per month. Of this amount, only $296.39 is presently being paid directly to [the wife]. This payment is contrary to the parties’ agreement. [The husband] is ordered to pay ' directly to [the wife] $210.61 per month effective August of 2004 forward to comply with the parties’ agreement.
“A judgment shall be entered against [the husband] to [the,wife] representing monies owed to her since August of 2003 through July of 2004 in the amount of $2,527.32. The monies shall be payable to [the wife] at the rate of $100.00 per month beginning August of 2004 until paid in full.”
The husband appeals. Initially, we note that § 30 — 2—51(b), Ala.Code 1975, the current statute permitting a trial court to divide retirement benefits as marital.property, does not apply to the issues raised in this appeal because the parties were divorced in 1995, before the January 1, 1996, effective date of the statute. See § 30-2-51, Ala.Code 1975 (History).
In the present case, the evidence was undisputed that the husband’s gross monthly retirement benefit was $1,014 and that the wife was receiving direct payments from OPM of $296.39 per month. The trial court’s judgment ordered the husband to pay the wife an additional $210.61 per month, thus giving the wife a total monthly benefit of $507, equal to exactly one-half of the husband’s gross monthly retirement benefit. “It is ... well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.” Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996). We conclude that the trial court construed paragraph 10 of the divorce judgment as an agreement by the parties to a simple “50-50” division of the husband’s retirement benefits when those benefits were ultimately determined and distributed, regardless of the fact that the husband worked and accrued retirement benefits for eight years after the *21 parties were divorced. In other words, the trial court determined that there was to be no offset for postdivorce accumulations to the husband’s retirement plan because the parties had agreed that the wife’s share did not depend upon what portion of the total benefits was accrued during the marriage.
On appeal, the husband does not take issue with the trial court’s construction of paragraph 10, at least insofar as the court determined as a matter of state law that the parties had agreed that the wife would receive one-half of his gross monthly retirement benefit. The husband argues, however, that federal law limits the wife to a “prorata share” of his monthly retirement benefit, as defined in 5 C.F.R. § 838.621. He maintains that the wife’s pro rata share is 29.23%, as OPM determined, and that, by virtue of Article VI, clause 2 of the United States Constitution (the Supremacy Clause), neither he nor the state court had the right to assign the wife a greater share of his benefits.
The husband also argues that the trial court impermissibly modified the divorce judgment (1) by making him a payor of the wife’s share of his retirement benefits, when, he says, paragraph 10 of the divorce judgment contemplated that only OPM would pay the wife’s share, and (2) by imposing on him the tax liability for the wife’s share of his retirement benefits when, he says, paragraph 10 of the divorce judgment contemplated that neither party was to suffer increased tax liability as a consequence of the agreement.
I. The Husband’s Federal Preemption Argument
At the outset, we point out that there is no issue in this case regarding preemption by the Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1001 et seq. ERISA applies “to any employee benefit plan if it is established or maintained ... by any employer engaged in commerce,” 29 U.S.C. § 1003(a)(1), and its provisions “supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title,” 29 U.S.C. § 1144(a). Despite its broad scope, ERISA expressly exempts from its provisions any “governmental plan.” 29 U.S.C. § 1003(b)(1). Section 1002(32) defines “governmental plan” as “a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing.”
Preemption of state law occurs in three ways. First, Congress may define expressly to what extent a federal statute preempts state law. See English v. General Elec. Co., 496 U.S. 72, 78, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Second, preemption may be found when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the subject matter. Id. at 79, 110 S.Ct. 2270. Third, preemption occurs where there is a direct conflict between the terms of the federal law and the state law. Id. Whether a federal statute preempts a common-law property division by a state court depends on the legislative intent behind the federal statute. The intent may be explicitly stated in the statute, see Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989)(holding that military-retirement pay that had been waived by the former husband in order to receive veteran’s disability benefits was not community property divisible upon divorce), or implied from the legislative purpose underlying the enactment of the statute, see Hisquierdo v. Hisquierdo, 439 U.S. 572, 583, 99 S.Ct. *22 802, 59 L.Ed.2d 1 (1979)(holding that Railroad Retirement Act benefits are not community property subject to division upon divorce). In Mansell, the Court stated:
“Because domestic relations are preeminently matters of state law, we have consistently recognized that Congress, when it passes general legislation, rarely intends to displace state authority in this area. See, e.g., Rose v. Rose, 481 U.S. 619, 628 (1987); Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979). Thus we have held that we will not find preemption absent evidence that it is ‘ “positively required by direct enactment.” ’ Hisquierdo, supra, at 581 (quoting Wetmore v. Markoe, 196 U.S. 68, 77 (1904)).”
Mansell v. Mansell, 490 U.S. at 587, 109 S.Ct. 2023.
“On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has ‘positively required by direct enactment’ that state law be pre-empted. Wetmore v. Markoe, 196 U.S. 68, 77 (1904). A mere conflict in words is not sufficient. State family and family-property law must do ‘major damage’ to ‘clear and substantial’ federal interests before the Supremacy Clause will demand that state law be overridden. United States v. Yazell, 382 U.S. 341, 352 (1966).”
Hisquierdo v. Hisquierdo, 439 U.S. at 581, 99 S.Ct. 802.
“The pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition.”
Hisquierdo v. Hisquierdo, 439 U.S. at 583, 99 S.Ct. 802.
The husband argues that federal law, specifically 5 C.F.R. § 838.621, prohibits a state court or a federal retiree from assigning to a former spouse more than a “prorata share” of the retiree’s retirement benefits. The federal statute governing assignability of civil-service retirement benefits, 5 U.S.C. § 8346, provides, in pertinent part:
“(a) The money mentioned by this subchapter is not assignable, either in law or equity, except under the provisions of subsection[] ... (j) of section 834-5 of this title, or subject to execution, levy, attachment, garnishment, or other legal process, except as otherwise may be provided by Federal laws.”
(Emphasis added.) Title 5 U.S.C. § 8345(j)(l) provides that FERS payments otherwise payable to a retired employee shall be paid to the employee’s former spouse j
“if and to the extent expressly provided for in the terms of—
“(A) any court decree of divorce, annulment, or legal separation, or the terms of any court lorjder or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation. ...”
In McCarty v. McCarty, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), the Únited States Supreme Court held that, under the statutory provisions then governing military-retirement benefits, military-retirement pay was not divisible upon divorce. Although that holding was later superseded by the Uniformed Services Former Spouses’ Protection Act, which authorized state courts to treat “disposable retired or retainer pay” as divisible marital property upon divorce, see 10 U.S.C. § 1408(c)(1), it is significant for present purposes that the McCarty Court drew a distinction between the statutory provisions then governing military retirement *23 from those governing civil-service retirement. The Court noted that the civil-service retirement statutes expressly recognized court-approved property settlements awarding retirement benefits to a former spouse, while the military-retirement statutes had no comparable provisions. 453 U.S. at 231-32, 101 S.Ct. 2728. This distinction served as one basis for the Court’s conclusion that the military-retirement statutes preempted state laws regarding marital-property divisions.
We cannot conclude that the federal statutes concerning civil-service retirement require states to abandon their own laws concerning the divisibility of civil-service retirement benefits upon divorce. In fact, the legislative history of the statutes convinces us that the intent behind their amendment in 1978 was to recognize existing state-created property rights and obligations with respect to civil-service retirement benefits and to cooperate with state courts in distributing those benefits. The legislative history of 5 U.S.C. § 8346 is particularly instructive and we set it out in some detail, quoting from an opinion of the Texas Court of Appeals in Boniface v. Boniface, 656 S.W.2d 131 (Tex.App.1983):
“[P]rior to amendment in 1978, 5 U.S.C. § 8346 provided that benefits payable under civil service retirement were ‘not assignable, either in law or equity, or subject to execution, levy, attachment, garnishment, or other legal process.’ This provision created a barrier which prevented the Civil Service Commission from being subject to any legal processes for purposes of making benefit payments to anyone other than the retiree. However, it did not have the effect of classifying civil service retirement benefits as separate property which, as between the parties, could not be divided or partitioned in a divorce proceeding. But its practical effect was to impose the burden that, if, as, and when benefits were received, payment must be made by the recipient to the divorced spouse of a community share as determined by the judgment of the court.
“In 1978, the Code was amended to permit direct payment of benefits to persons other than the retiree to the extent provided for in ‘any court decree of divorce, annulment, or legal separation, or the terms of any court order or court-approved property settlement agreement incident to any court decree of divorce, annulment, or legal separation.’ 5 U.S.C. § 83460(1) (1980)....
“This amendment simply relieved the parties of the burden of making and receiving payments between themselves and permitted the future convenience of direct payment by the Commission (Office of Personnel Management) to the divorced spouse of that portion of the benefits provided for in the court’s order. The amendment created no new substantive property rights between the parties. It merely instituted a procedure by which the Commission was to recognize existing rights and cooperate with state courts in distributing benefits accordingly.
“The legislative history of the 1978 amendment specifically recognized the pre-existing authority of state courts to regard civil service retirement benefits as community property and to deal with them as such:
“ ‘In recent years, many State courts have ruled that future retirement benefits earned during a marriage should be considered an asset of the marriage to be apportioned in the event of a legal separation, divorce, or annulment. [The amendment] will authorize the Civil Service Commission to recognize such court rulings and comply with court determinations.
*24 “‘In the [House Post Office and Civil Service, and Senate Governmental Affairs] committee’s view, the enactment of legislation which permits Federal cooperation with State law and court orders is clearly needed. The committee shares the opinion of the Civil Service Commission that [the amendment] is the proper approach to the problem of benefits for former spouses.
[[Image here]]
“S. Rep. No. 1084, 95th Cong., 2d Sess. 2, 4, reprinted in 1978 U.S.Code Cong. & Ad. News 1379, 1380-82.
[[Image here]]
“Thus, ... payments made before the amendments must be disposed of between the parties pursuant to state court orders. But post-amendment benefits would be paid directly to the parties pursuant to those court orders. In other words, the 1978 amendments did not affect the nature of civil service retirement benefits accrued and vested during marriage. Such benefits were and are community property under the law of [Texas] both before and after the amendments. But it was only after the adoption of these amendments that federal authorities' could be bound by state court decisions in their future payment of benefits pursuant to the division of property incident to or arising out of a divorce.
“As stated by the Chairman of the Civil Service Commission:
‘“[In the view of the Commission] State laws and State courts have always controlled in matters of domestic relations and property rights. These courts are specifically geared to determine such questions as an individual’s obligation to a former spouse on an individual case basis after considering many factors such as the financial status of both parties, property settlements, children involved, and the reasons for the divorce.’
“S.Rep. No. 1084, supra, at 1383....”
Boniface v. Boniface, 656 S.W.2d at 133-34 (emphasis removed).
Based on the legislative history, it is clear that Congress intended that OPM cooperate with state courts in distributing civil-service retirement benefits to former spouses. It is also clear that 5 U.S.C. § 8346(a) and 5 U.S.C. § 8345(j)(1) are enforcement statutes, and the accompanying regulations, specifically 5 C.F.R. § 838.621, constitute “a mechanism for the enforcement of domestic-relations orders of all kinds involving ... a division of property.” See Ex parte Smallwood, 811 So.2d 537, 539 (Ala.2001).
In Smallwood, the Alabama Supreme Court decided that a state trial court could approve a settlement agreement between divorcing spouses whereby the husband assigned to the wife 100% of his military-retirement pay, despite the existence of federal law, 10 U.S.C. § 1408(e)(1), limiting to 50% the amount of military-retirement pay that could be paid by the secretary of the appropriate branch of the armed services to a former spouse of a military retiree as alimony, child support, or as a property division. The court held:
“Section 1408 is entitled ‘Payment of retired or retainer pay in compliance with court orders.’ A plain reading of § 1408 indicates that it is an enforcement statute. It provides a mechanism for the enforcement of domestic-relations orders of all kinds involving the payment of child support, alimony, or a division of property. See 10 U.S.C. § 1408(a)(2)(B).”
811 So.2d at 539. Following the rationale of Smallwood, it is apparent to this court that the regulations implementing 5 U.S.C. *25 § 8345(j)(l) indicate Congressional intent to have OPM comply with and facilitate the making of payments due under state-court orders dividing civil-service employee retirement benefits.
Moreover, the provisions of 5 U.S.C. § 8346, 5 U.S.C. § 8345(j)(l), and the accompanying regulations indicate that Congress intended that OPM perform purely ministerial duties, that it refrain from engaging in dispute resolution between the parties to a FERS-benefits controversy, and that any such controversy be submitted to and resolved by state trial courts. See 5 C.F.R. § 838.101(a)(2), which provides:
“(2) In executing court orders under this part, OPM must honor the clear instructions of the court. Instructions must be specific and unambiguous. OPM will not supply missing provisions, interpret ambiguous language, or clarify the court’s intent by researching individual State laws. In carrying out the court's instructions, OPM performs purely ministerial actions in accordance with these regulations. Disagreement between the parties concerning the validity or the provisions of any court order must be resolved by the court.”
Based on the foregoing authorities, we hold that federal law does not preempt the trial court’s construction of paragraph 10 of the parties’ settlement agreement.
We also hold that the trial court’s construction of the agreement was a reasonable interpretation of the language employed by the parties in light of the circumstances existing at the time of the divorce. Paragraph 10 provides that “the wife shall receive as her separate property an interest equal to one-half of the value of the husband’s retirement plan upon his retirement.” The plain language of the agreement refers to the husband’s “retirement plan” without limiting that term to retirement benefits earned during the marriage. The trial court reasonably determined that the agreement contemplated that, upon the husband’s retirement, the wife would receive half of what the husband received as a retirement benefit, regardless of the fact that what the husband received at retirement would be due, in part, to benefits accrued for eight years after the marriage ended. The QDRO issued to OPM eight months after the parties’ divorce reinforces the trial court’s interpretation of paragraph 10 as a simple “50-50” division of the husband’s retirement benefits without offsetting any post-divorce accumulations to the husband’s retirement benefits. The QDRO states, in pertinent part:
■ “The United States Office of Personnel Management is directed to pay the former [wife’s] share directly to the former [wife]. The former [wife] shall have this amount as her separate property and in addition thereto shall have as her separate property any interest or earnings accruing thereon subsequent to the date of this order.”
(Emphasis added.) Because the parties to a divorce are free to bargain away their separate property, the trial court did not err in approving and incorporating into the divorce judgment a provision allowing the wife a share of the nonmarital portion of the husband’s retirement plan, that is, a share that did not depend upon what portion of the total benefits was accrued during the marriage.
The right asserted by the wife in this case — to receive one-half of the husband’s monthly retirement benefit — conflicts with the position taken by the husband — that OPM correctly relied on 5 C.F.R. § 838.621 to pay the wife only 29.23% of the husband’s monthly benefits. By submitting this controversy to the trial court, the parties set in motion exactly what the *26 last sentence of 5 C.F.R. § 838.101(a)(2) contemplates, namely: that “[d]isagreement between the parties concerning the validity or the provisions of any court order will be resolved by the court.” The trial court’s construing the 1995 divorce judgment to require that the wife’s share of the husband’s total retirement benefits be 50% — and thus that the wife’s share did not depend upon what portion of the total was accrued during the marriage — necessarily means that OPM misconstrued the 1995 divorce judgment and the QDRO accompanying it by paying the wife a “prora-ta share.”
The “prorata share” provision at issue in this appeal explains how OPM will interpret orders from state courts containing date-specific annuity valuations when the date specified in the court order is either (1) the beginning of the marriage; or (2) some time before the employee retires. Section 838.621 provides:
“ § 838.621 Prorata share.
“(a) Prorata share means one-half of the fraction whose numerator is the number of months of Federal civilian and military service that the employee performed during the marriage and whose denominator is the total number of months of Federal civilian and military service performed by the employee.
“(b) A court order that awards a former spouse a prorata share of an employee annuity or a refund of employee contributions by using the term ‘prorata share’ and identifying the date when the marriage began satisfies the requirements of §§ 838.305 and 838.504 and awards the former spouse a prorata share as defined in paragraph (a) of this section.
“(c) A court order that awards a portion of an employee annuity as of a specified date before the employee’s retirement awards the former spouse a prorata share as defined in paragraph (a) of this section.
“(d) A court order that awards a portion of the ‘value’ of an annuity as of a specific date before retirement, without specifying what ‘value’ is, awards the former spouse a prorata share as defined in paragraph (a) of this section.”
(Emphasis on “prorata share” original; other emphasis added.)
As we have previously observed, calculating the “prorata share” pursuant to 5 C.F.R. § 838.621 requires the use of the “coverture fraction.” Section 838.621 sets out the circumstances under which OPM 'will use the coverture fraction as a valuation tool — a tool that is useful only when a spouse’s share does depend upon what portion of the total retirement benefits was accrued during the marriage.
“ ‘The sole purpose [of the coverture fraction] is to determine what part of the value of the plan is attributable to the years of the marriage and hence marital property subject to equitable distribution.’ ”
Dylan A. Wilde, Obtaining an Equitable Distribution of Retirement Plans in a Divorce Proceeding, 49 S.D.L.Rev. 141, 157-58 (2003)(quoting Paulone v. Paulone, 437 Pa.Super. 130, 649 A.2d 691, 695 (1994)). See also Wilkinson v. Wilkinson, 905 So.2d at 14 (Yates, P.J., concurring in the result). OPM erroneously used § 838.621 to calculate the wife’s share even though the parties’ agreement was a simple “SO-SO” division of the husband’s retirement plan; the wife’s share did not depend upon what portion of the total benefits was accrued during the marriage. Moreover, the 1995 divorce judgment neither used the term “prorata share” nor identified a specific date before the husband’s retirement as the time of valuation.
*27 The regulations implementing 5 U.S.C. § 8346 and 5 U.S.C. § 8345(j)(l) contemplate the situation that has presented itself in this case, namely: that OPM’s payment to the former spouse of a civil-service retiree may not reflect what the state court intended in the original divorce judgment; that the parties may return to the state court for a clarification of that judgment, see 5 C.F.R. § 838.101(a)(2); and that, upon clarification, the parties may then submit an amended state-court order to OPM for processing. See 5 C.F.R. § 838.225, which provides, in pertinent part:
“§ 838.225 Processing amended court orders.
“(a) If the ... retiree or former spouse submits an amended court order pertaining to payment of a portion of the employee annuity, OPM will process the amended court order prospectively only, effective against employee annuity accruing beginning the first day of the second month after OPM receives the amended court order.”
See also 5 C.F.R. § 838.234 and 5 C.F.R. § 838.225(b) (pertaining to the collection of arrearages).
II. The Husband’s Single-Payor Argument
The husband argues that the trial court erred by making him a payor of the wife’s share of his retirement benefits, when, he says, paragraph 10 of the divorce judgment contemplated that only OPM would pay the wife’s share. We find no error in this portion of trial court’s judgment because we do not believe that the 1995 divorce judgment, by mentioning OPM, thereby precluded payments to the wife from any other source. Cf. Ex parte Smallwood, supra (approving payment to wife of husband’s military-retirement benefits from two sources). Moreover, as we have previously pointed out in Part I of this opinion, the husband has an available administrative remedy; he may submit an amended order to OPM and expect OPM to adjust its payments to the wife accordingly, thereby relieving him of the obligation to pay the wife directly.
III. The Husband’s Tax-Liability Argument
The husband contends that the trial court’s judgment requiring him to make direct payments to the wife of $210.61 per month in order to bring her share of his retirement benefits up to the 50% figure mandated by the divorce judgment wrongly penalizes him and unjustly benefits the wife. He maintains that the trial court’s judgment impermissibly modified the property-division portion of the divorce judgment (which, he says, envisioned no increased tax liability for either party) by forcing him to transfer sums from which the income tax has already been deducted to the wife tax-free.
The record contains no evidence regarding how, or even if, OPM makes income-tax deductions from FERS-benefit payments to the former spouse of a civil-service retiree. We assume that OPM deducts income tax only from the retiree’s share and deducts only the amount of tax applicable to the retiree; we assume that OPM makes no deduction of income tax from the spouse’s share. That assumption is based on the fact that OPM calculated that the wife was entitled to 29.23% of the husband’s total retirement benefit of $1,014, and it paid her precisely that percentage ($296.39) without deduction. We also assume, 'if the husband is currently having income tax deducted from the portion of the retirement benefits that he is receiving, and the amount that he is receiving is reduced upon presentation to and processing by OPM of an amended *28 order, that the tax deducted from the husband’s share will be modified accordingly.
The judgment of the Baldwin Circuit Court is affirmed.
AFFIRMED.
THOMPSON and PITTMAN, JJ„ concur.
MURDOCK and BRYAN, JJ., concur in the result, without writing.